(78 Misc. Rep. 482.)

PEOPLE ex rel. UNGER v. KENNEDY, Warden.

(Supreme Court, Special Term, New York County. December 4, 1912.)

1. HABEAS CORPUS (§ 94*)—SCOPE OF HEARING—JURISDICTIONAL QUESTIONS.

Although Code Civ. Proc. § 2016, denies habeas corpus to one detained under a final judgment or decree of a competent tribunal of civil or criminal jurisdiction, it is competent upon habeas corpus to inquire into the jurisdiction of the court imposing the sentence under which relator is held.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 82, 92; Dec. Dig. § 94.*]

2. CRIMINAL LAW (§ 84*)—CREATION OF COUNTIES—STATUTORY PROVISIONS—TIME WHEN EFFECTIVE.

The Bronx County Act (Laws 1912, c. 548) provided by section 17 that it should take effect immediately, by section 3 for the creation of a County Court and of a Surrogate's Court, and by section 5 that county officers to be elected at the general state election in 1913 should take office January 1, 1914, and that the officers of New York county should retain jurisdiction until that date. By sections 6, 7, and 8 it fixed the jurisdiction of courts, and provided that, within 30 days after the act took effect, the time and place for holding terms of the Supreme Court should be fixed, and that from the time the act took effect the Supreme Court, and on and after January 1, 1914, the County Court, should have jurisdiction over all criminal offenses. *Held,* that the mere designation of a territory to be a county did not complete its organization, and that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the provision for immediate effect extended only to preliminary and formative purposes before a referendum vote in November, 1912, which would remove the contingency that the act might not become operative, and that before that time criminal jurisdiction of the Court of General Sessions of the City of New York was not superseded by the exclusive jurisdiction of the Supreme Court, so that an offense committed in June, 1912, was within the jurisdiction of the Court of General Sessions.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 115–124; Dec. Dig. § 84.*]

3. CONSTITUTIONAL LAW (§ 65*)—LEGISLATIVE POWERS—DELEGATION—REFERENDUM PROVISION..

The referendum provision of Bronx County Act (Laws 1912, c. 548, approved April 19, 1912) § 15, to the effect that it should be inoperative unless at the general election in November, 1912, a majority of the votes cast should be in its favor, was not unconstitutional as a delegation of legislative power, since on approval the power of the Legislature was exercised, and on an affirmative vote the act would be effective, not by virtue of the popular vote, but by virtue of its enactment by the Legislature.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 116; Dec. Dig. § 65.*]

Habeas corpus by Joseph J. Unger (alias McKenna) against John S. Kennedy, as Warden of Sing Sing Prison. Writ dismissed, and relator remanded to custody.

Order affirmed, 139 N. Y. Supp. 896.

Emanuel Klein, of New York City, for relator.

Charles S. Whitman, Dist. Atty., and Robert C. Taylor and Stanley L. Richter, Asst. Dist. Attys., all of New York City, for the People.

SEABURY, J. The relator seeks, upon the return to a writ of habeas corpus, to be discharged from the custody of the warden of Sing Sing Prison and to be remanded to the City Prison to await trial in the Supreme Court. It appears from the petition and the return that the relator, Joseph J. McKenna, is now imprisoned by virtue of a warrant issued by Hon. Otto A. Rosalsky, a judge of the Court of General Sessions of the Peace in and for the County of New York, which directs the infliction of capital punishment upon said McKenna, to be made the week commencing December 9, 1912. The said warrant was made pursuant to a judgment of conviction entered upon a verdict of a jury in the said Court of General Sessions finding the said McKenna guilty of the crime of murder in the first degree. Sentence of death was imposed upon said McKenna on October 31, 1912. The return shows that the offense for which McKenna was convicted was committed on June 6, 1912, within the territory embraced within the borough of the Bronx. The claim of the relator is that the said Court of General Sessions was without any jurisdiction to try him for the offense charged by reason of the passage by the Legislature of the act known as the "Bronx County Act," which is chapter 548 of the Laws of 1912. This claim is based upon the contention that the so-called referendum provision of that act is unconstitutional and void, and that therefore said act took effect on the 19th of April, 1912, and that, pursuant to its terms, the Supreme Court of the state had ex-

clusive jurisdiction over all crimes committed within the territory of the Bronx, except those cognizable in the Court of Special Sessions and the Magistrates' Court, from the date last named until January 1, 1914, when the organization of the government of the county of Bronx shall be complete.

[1] The first question presented for determination is whether the relator has the right to raise his present contention upon a writ of habeas corpus, or whether the writ should be dismissed on the ground that the relator's only remedy is by appeal. Section 2016 of the Code of Civil Procedure provides that a person is not entitled to a writ of habeas corpus "where he has been committed or is detained by virtue of the final judgment or decree of a competent tribunal of civil or criminal jurisdiction." The present application challenges the jurisdiction of the Court of General Sessions to try the action against this defendant. If the contention of the relator be correct, that court was without legal power to render judgment, and was not a competent court, and, consequently, the relator is not held by virtue of the final judgment of a competent tribunal of criminal jurisdiction. The only question which the relator seeks to raise upon this writ is the question of the jurisdiction of the court which imposed sentence upon him, and this question it is competent to inquire into upon a writ of habeas corpus. People ex rel. Hubert v. Kaiser, 206 N. Y. 46, 52, 99 N. E. 195.

[2] It is obvious from an examination of the act under review that all of its provisions do not take effect for all purposes at the same time. The seventeenth section, which provides that "this act shall take effect immediately," cannot mean that from that instant the county of Bronx was to spring, Minervalike, fully armed, into the class of counties. The designation of a territory and a legislative fiat that such a territory shall be a county does not, ipso facto, create a county. Something else is requisite. There can be no county until a government is created and organized. The act provides for the organization of such a county government to go into effect on January 1, 1914. For general county purposes, therefore, the county of Bronx does not come into existence until January 1, 1914. In People v. McGuire, 32 Cal. 140, it was held that where a law was passed providing for the creation of a new county out of parts of counties already existing, and the act provided for the future election of county officers and fixed a time after their election when they shall enter upon the discharge of their duties, the territory described did not become a county for all county purposes until its organization was perfected by the election of its officers. In that case the court said:

"To constitute a county something more is required than to define its boundaries. A local government must be provided, and the creation of the county is not accomplished until both these things have been done in the appointed mode. To hold otherwise would lead to very absurd consequences. It would place the people and property within the territory of the proposed county wholly without the pale of the government, and erect a place where, in the forcible language of the Attorney General, 'there would be neither civil nor criminal law, where crime would go unpunished, and criminals hold high carnival.' The Legislature could not have intended such consequences,

and there is nothing in the statute which stands in the way of a different and more rational conclusion."

If the county government is to be organized, as provided by the act, to come into operation on January 1, 1914, then obviously, certain preliminary steps must be taken with that end in view. It is evident, also, that such steps cannot be taken except pursuant to law, and that to be effective they must be taken prior to January 1, 1914. For all such formative purposes, the act creating the county of Bronx takes effect immediately, as section 17 of that act provides.

The legislative purpose was to prevent an interregnum and to prevent the administration of justice from being obstructed or interfered with during the period of transition. It is clear from the provisions of the act that, until the Supreme Court shall be in a position to administer justice in the territory of the Bronx, the Court of General Sessions of the County of New York and the Supreme Court were to exercise concurrent jurisdiction over crimes committed within that territory, and that the sessions of these courts during that period were to continue to be held within New York county. That such was the legislative intention is evident, first, from the provisions of section 3, which provide for the election of county officers in the future; second, from the provisions of section 5, that the county officers of New York county shall continue to have their present jurisdiction within the county of Bronx until the 1st day of January, 1914, except as otherwise provided; third, from the provisions of sections 6, 7, and 8, which make it clear that the Supreme Court was not to hold sessions within the Bronx until terms of the court had been designated, and until a commissioner of jurors had been appointed; and, fourth, from the sixteenth section of the act, which contains the referendum provision. The inevitable inference to be drawn from these provisions is that the Supreme Court could not, immediately after April 19, 1912, be in a position to administer justice by holding its sessions within the territory of the Bronx, and that, in the period intervening between the passage of the act and the time when the sessions of the Supreme Court were to be held within the county, the Supreme Court and the Court of General Sessions were to exercise a concurrent jurisdiction over crimes committed within the Bronx such as they had theretofore exercised, and that the sessions of those courts were to be held as theretofore within the county of New York.

It is the contention of the relator upon this application that the act takes effect for the purpose of determining jurisdiction over crimes on April 19, 1912, and that within 30 days after this date, the Governor should have appointed a commissioner of jurors, and the Appellate Division should have designated the times and places for holding special and trial terms of the Supreme Court in the county of Bronx, and that 30 days after April 19, 1912, the Supreme Court had exclusive jurisdiction over all crimes committed within the territory of the Bronx, and that therefore the relator's trial in the Court of General Sessions was not before a competent court having jurisdiction. In considering the question presented for determination, it is to be borne in mind that the relator does not challenge the constitutionality

of the act in so far as it assumes to create the county of Bronx. On the contrary, the relator asserts that the whole act, with the exception of the referendum clause, is the result of a valid exercise of the legislative power. The act provides that at the general election of November, 1912, there shall be submitted to the voters of the borough of the Bronx the question:

"Shall the territory within the borough of the Bronx be erected into the county of Bronx?"

The same clause of the act also provides that:

"If it shall appear that a majority of the votes cast on said question at said general election were against the erection of the county of·Bronx, then this act shall be inoperative and void."

It is conceded that this question was submitted to the voters of the borough of the Bronx at the general election in November, 1912, and that a majority of the votes cast on the question were in favor of the creation of the county of Bronx. If this referendum provision of the act is constitutional, it is conceded that the relator's contention is without merit, and that there is no possible legal basis upon which that contention can rest. It is a reasonable inference that the Legislature did not intend that the designation of the terms of the Supreme Court should be made or a commissioner of jurors appointed until it was a certainty that the act would become operative. While a contingency remained possible, upon the happening of which the act creating the new county would be inoperative, no reason existed for the designation of terms of the Supreme Court or the appointment of a commissioner of jurors within the new county. The designation of terms ·of the Supreme Court, while there was a possibility that the act would become inoperative and void within a few months, could have served to create only a condition of disorder and confusion, which it is not to be supposed the Legislature intended to bring about.

[3] The argument urged to establish the unconstitutionality of the referendum provision is that the Legislature had no power to submit the question as to the erection of the county of Bronx to the voters of the borough of the Bronx, nor had the people of that borough power to act upon it; that the power of the people was suspended when they adopted the Constitution. The government of the state is a representative democracy, and in passing laws the people can act only through their representatives in the Legislature. Such, in brief, is the argument used by Ruggles, C. J., in Barto v. Himrod, 8 N. Y. 483, 489, 59 Am. Dec. 506, as applied to a different state of facts. In that case the court had under review an act of the Legislature entitled an "Act establishing free schools throughout the state," and the court held the act unconstitutional and void, for the reason that the fact of its becoming a law was made to depend upon the result of a popular vote. That act provided that the electors should determine "whether this ·act shall or shall not become a law." The court held that the duty of determining whether the act in question should be a law was devolved by the Constitution upon the Legislature, and that the Legislature could not delegate its power to the people.

In People· v. Fire Association of Philadelphia, 92 N. Y. 311, 317 [44 Am. Rep. 380], the Court of Appeals, speaking through Judge Finch, said:

"This court has steadily declined to push the doctrine ·of Barto v. Himrod beyond the point which it decided. In Bank of Rome v. Village of Rome, 18 N. Y. 39, we sustained as constitutional an act conferring upon municipal authorities certain powers not to be exercised until the act· had been approved by two-thirds of the taxpayers. The distinction taken was that the law took effect immediately and conferred the necessary power, but did not compel the village to act under it unless the taxpayers so determined. The law was complete, although its operation depended upon a contingency, which might or might not happen. A similar distinction was taken in other cases. Starin v. Town of Genoa, 23 N. Y. 439; Bank of Chenango v. Brown, 26 N. Y. 467; Clarke v. City of Rochester, 28 N. Y. 605. While there were differences of opinion ·in these cases as to the precise grounds which distinguished them from Barto v. Himrod, there was an entire concurrence in the construction put upon the latter case, a construction which makes it inapplicable to the statute under consideration."

The act under review contains a provision of different character from that under consideration in Barto v. Himrod, supra. In enacting the Bronx County Act the legislative power was fully exercised. The Legislature enacted the law and provided a contingency upon which it might become inoperative. The law was none the less complete because its operation depended upon a contingency which might or might not happen. It did not, on this account, offend against the principle that the Legislature cannot delegate the lawmaking power. That power involves the right to alter or to amend measures proposed for enactment, or to substitute some other measure in its place. In providing that the operation of the law should depend upon the choice of the voters of the Bronx no power to amend or alter the law or to substitute any other law for it was delegated to others. As will be shown below, the right of the Legislature to enact a law, which may or may not take effect upon the happening of a contingency, has been universally recognized. The provision of the act that it should become inoperative if a majority of the voters of the Bronx voted against the erection of the new county was as much an exercise of the legislative power as any other provision of the act. The Legislature had the right ·to provide for ascertaining the will of the voters of the Bronx on this question and, *after* it had ascertained that a majority of the voters favored the erection of a new county, to enact a law creating such county. Bull v. Read, 54 Va. 78; People, etc., v. Flanagan, 66 N. Y. 237.

There is no essential difference in principle where the Legislature reverses the process and in a single act enacts the law and provides that it shall become inoperative if a majority of those to be peculiarly affected by its provisions vote against it. The contingency prescribed by the Legislature having happened, the law takes effect, not by virtue of the popular vote, but by virtue of the act of the Legislature in enacting it. The action of the voters in signifying their approval of the act cannot properly be said to have enacted the statute. If the Legislature may make the operation of a law dependent upon some contingency, then it is equally clear that the Legislature is the judge as

to the nature and character of the contingency upon which the operation of the law may be made to depend. If the contingency prescribed is not in itself an illegal one, and if it has a natural connection with the object and purpose of the statute, I know of no authority resident in the courts to declare the law void on this account. If the Legislature is the proper authority to determine as to the nature ·and character of the contingency, why should it be held that the law becomes void because the contingency prescribed is the vote of the people to be affected by the law? In regard to many matters of local government it· would be impossible to devise a more reasonable contingency than the will of the people to be most directly affected by the law. Whether or not certain legislation is expedient or desirable is always a question for the Legislature to determine, and the expediency of the legislation may in certain cases depend upon the wishes of the people to be affected by it. Thus in the present case the Legislature may have been of the opinion that, if the majority of the voters of the Bronx were in favor of a separate county, it would be expedient to so provide; but that, if a majority of the voters of that borough were opposed to the creation of a new county, such legislation would be inexpedient. If this was the opinion of the Legislature, then it is difficult to understand how they could have adopted a more reasonable method or have prescribed a contingency better adapted to ascertaining whether it was expedient to enact the law in question than that which they adopted and prescribed. To hold that because the contingency prescribed involved an expression of the popular will it was therefore contrary to the principle of representative government seems to me to be little short of absurd. The contingency prescribed, instead of being opposed to the principle of representative government, was well calculated to insure effect being given to that principle.

Nor does it appear to me a valid objection to the law that the contingency prescribed related only to the electors of the borough of the Bronx and not to the electors of New York county. The people of the Bronx were to be more closely affected by the contemplated change than the people of any other section of the county of New York, and the power to determine as to the nature of the contingency upon which the law should become operative rests with the Legislature and not the judicial branch of the government. Where the matter upon ·which the Legislature acts is clearly connected with the contingency prescribed, and the act may or may not be expedient, dependent upon the happening of the contingency, the operation of the law may be made to depend upon the happening of such an event. Where the Legislature is of ·the opinion that it would be inadvisable to erect a separate county within a certain territory unless the majority of the voters of that territory desired to have such a county government erected, the Legislature may properly make the operation of such a law dependent upon the choice of the people within the territory to be peculiarly affected by the contemplated change. Such a contingency is neither immoral nor illegal, but, in the case under consideration, seems to me to have been a prudent and wise exercise of the legislative power.

These views seem to me to be fully sustained by authority.    In People v. Fire Ass'n of Philadelphia, supra, Judge Finch said:

"Most laws are made to meet future facts.  They are complete when passed, but sleep until the contingency contemplated sets them in operation. A law which defines and punishes murder is none the less complete and authoritative although no murder be committed, and so the contingency it was framed to meet does not occur.  Such contingency may sometimes be, instead of a certain and definite fact, one which is variable and changeable.  The legislation suited to such a fact and adapted to such a future emergency may properly recognize its movable character and be itself made flexible to the changing emergency, and this very characteristic is the product of legislative will and discretion rather than a surrender of it."

In Clarke v. City of Rochester, 28 N. Y. 605, Denio, C. J., in delivering the opinion of the court, said:

"But while general statutes must be enacted by the Legislature, it is plain the power to make local regulations having the force of law in limited localities may be committed to other bodies representing the people in their local divisions or to the people of those districts themselves.  Our whole system of local government in cities, villages, counties, and towns depends upon that distinction.  The practice has existed from the foundation of the state and has always been considered a prominent feature in the American system of government.  It is recognized in the Constitution itself in the section which prescribes to the Legislature the duty to provide for the organization of cities and incorporated villages, etc., restricting their power of taxation and borrowing."

In Stanton v. Board of Supervisors, 191 N. Y. 428, 84 N. E. 380, Judge Haight said:

"We thus have distinctly presented the difference between enactments pertaining to the whole state and those pertaining to localities, and such distinction is not left to those which are local or general laws; for general laws may be and in certain cases must be enacted which pertain to localities only.  And especially is this true with reference to county seats, for the Legislature is prohibited from passing any private or local bill locating or changing county seats.  Const. art. 3, § 18.  While it may not be necessary, the Legislature has generally recognized the right of the electors of a county to select and locate their own county buildings.  They of all persons can best determine the place that would be most accessible and convenient for the transaction of the business of the county.  There is, therefore, a manifest propriety in making a change dependent upon an affirmative vote of a majority of the electors."

In People ex rel. Caldwell v. Reynolds, 10 Ill. (5 Gilman) 1, the court had under review a law passed by the General Assembly providing for the division of a county and the formation of a new county for the same territory, to take effect on a majority of the votes being cast for such a division.  The Supreme Court of Illinois held that such an act was constitutional.  In that case Caton, J., said:

"The law as passed was complete and perfect, although its principal provisions were to take effect upon a contingency, the determination of which did not depend upon the exercise of legislative powers by the people, but upon an expression which they were authorized to make, rather in the execution than in the enactment of the law, an expression to be made in a legitimate and an ordinary way.  *  *  *  Without pursuing the subject further, we think enough has already been said to show that the Legislature may delegate authority, either to individuals or to bodies of people, to do many important legislative acts, not only similar to that authorized by law, the validity of which is here questioned, but also others of a more important, and,

upon principle, of a much more questionable, propriety; but in doing this it does not divest itself of any of its original powers. It still possesses all the authority it ever had. It is still the repository of the legislative power of the state."

In State v. Parker, 26 Vt. 357, the whole subject now under consideration received thorough-going treatment at the very competent hands of Chief Justice Redfield, who said:

"And it is admitted on all hands that the Legislature may enact laws, the operation or suspension of which shall be made to depend upon a contingency. This could not be questioned with any show of reason or sound logic. It has been practiced in all free States for hundreds of years, and no one has been lynx-eyed enough to discover, or certainly bold enough to declare, that such legislation was, on that account, void or irregular. * * * Congress passes laws almost every session whose operation is made contingent upon the revenue laws of foreign states or their navigation laws or regulations, and upon a hundred other uncertainties more or less affected by the will or agency of voluntary beings or communities; and in most of these cases the suspension or operation of the enactment depends ultimately, perhaps, upon the mere will and agency of an executive government, and of the perfect regularity and constitutionality of such enactments no question was ever made. Numerous other instances may be found where statutes have been made dependent upon future contingencies, not only for the time of their coming in force, but for their very vitality, and no question of their validity has ever been made upon that ground. * * * If the operation of a law may fairly be made to depend upon a future contingency, then, in my apprehension, it makes no essential difference what is the nature of the contingency, so it be an equal and a fair one, a moral and legal one, not opposed to sound policy, and so far connected with the object and purpose of the statute as not to be a mere idle and arbitrary one."

In Bull v. Read, 54 Va. (13 Grat.) 78, the court, speaking through Judge Lee, said:

"It will be conceded that the Legislature may provide that an act shall not take effect until some future day named or until the happening of some particular event or in some contingency thereafter to arise or upon the performance of some specified condition. The exigencies of the government may frequently require laws of this character, and to deny to the Legislature the right so to frame them would be unduly to qualify and impair the powers plainly and necessarily conferred. Accordingly we find this a familiar feature in the legislation both of the national and state governments. * * * The Nonintercourse Acts of March 1, 1809 (2 Story's Acts 10th U. S. Cong. c. 91), May 1, 1810, and March 2, 1811 (2 Story's Acts 11th U. S. Cong. cc. 56, 96), were expressly made to depend upon the course that might be adopted by England and France with regard to the edicts promulgated by them, to be made known by proclamation of the president. And the principle of this mode of legislation was sustained by the Supreme Court (Brig Aurora v. United States, 7 Cranch, 382, 3 L. Ed. 378, and see another illustration, Gray v. State of Delaware, 2 Har. 76). * * * Now, if the Legislature may make the operation of its act depend on some contingency thereafter to happen or may prescribe conditions, it must be for them to judge in what contingency or upon what condition the act shall take effect. They must have the power to prescribe any they may think proper, and if the condition be that a vote of approval shall first be given by the people affected by the proposed measure, it is difficult to see why it may not be as good and valid as any other condition whatever. There can be no inherent vice in the nature of such a condition which shall serve to defeat the act when it would be legal and effectual if made to depend upon some other event. To say in such a case that the act is made by the voters and not by the Legislature is to disregard all proper distinctions and involves an utter confusion of ideas upon this subject. Wherever the contingency, upon which a law is to take

effect, depends upon the action of third persons, it might be said with equal truth that the law was enacted by those persons instead of the Legislature. But there is a plain distinction between the act to be done by the voters and the legislative function. They have no power to alter or amend the act or substitute something else in its place. When it passed the Assembly, with the forms and in the mode prescribed by the Constitution, the Legislative function was exhausted, although, by its terms, it required a vote of approval by the people interested before it went into operation. But when that vote was given, and the result ascertained in the mode prescribed, the act became as operative and effectual as if it had simply fixed upon that day for its commencement. That its operation should depend upon the result of a vote is as much a part of the legislative will as any other of its provisions, and there can be no difference in principle depending on the nature of the event or contingency upon which the act is to take effect, though the differences in kind and degree may be without end."

In State ex rel. Attorney General v. O'Neill, 24 Wis. 149, the court said:

"And in respect to legislation of this character the decided preponderance of authority is in support of the doctrine that the Legislature may refer 'questions of local government, including police regulations, to the local authorities, on the supposition that they are better able to decide for themselves upon the needs as well as the sentiments of their constituents than the Legislature possibly can be,' and upon the same ground may provide that an act, perfect in itself, may go into operation and effect on a contingency of a vote of the people in its favor. It seems to us that all the Legislature has done in the thirty-seventh section above quoted was to prescribe the condition upon which the law was to be in full force and effect, and that when the condition was performed or the contingency happened the provisions of the law derived their authority not from the vote, but from the will of the lawmaking power."

See, also, People v. Nally, 49 Cal. 478; Locke's Appeal, 72 Pa. 491, 498, 13 Am. Rep. 716; State v. Corvallis & E. R. Co., 59 Or. 450, 458, 117 Pac. 980; Rutter v. Sullivan, 25 W. Va. 427, and Werner v. City of Galveston, 72 Tex. 22, 7 S. W. 726, 12 S. W. 159.

Judge Cooley, after stating the general principle that the legislative power cannot be delegated, says:

"But it is not always essential that a legislative act should be a complete statute, which must in any event take effect as law at the time it leaves the hands of the legislative department. A statute may be *conditional*, and its taking effect may be made to depend upon some subsequent event. * * * For the like reasons the question whether a county or township shall be divided and a new one formed, or two townships or school districts formerly one be reunited, or a city charter be revised, or a county seat located at a particular place, or, after its location, removed elsewhere, or the municipality contract particular debts or engage in a particular improvement, is always a question which may with propriety be referred to the voters of the municipality for decision." Constitutional Limitations, pp. 164–167 (7th Ed.).

It follows, from what has been said and from the authorities cited, that the referendum provision of the act is constitutional. As this provision of the act is constitutional, it necessarily follows that the Legislature could not, for the purpose of terminating the jurisdiction of the Court of General Sessions within the Bronx, have intended that the act should take effect on April 19, 1912. Whether the Legislature intended to provide that the jurisdiction of the Court of General Sessions within the Bronx should terminate 30 days after the

general election of 1912, or that that court should continue to exercise a concurrent jurisdiction in New York county with the Supreme Court over criminal causes arising in the Bronx until January 1, 1914, it is not, for the purpose of disposing of this application, necessary to inquire. Either view is fatal to the contention of the relator, and as it is perfectly clear to me that under no possible construction can the act be held have taken effect on April 19, 1912, for the purpose of terminating the jurisdiction of the Court of General Sessions within the Bronx, the writ must be dismissed.

I entertain no doubt that at the time of the indictment and trial of the relator in the Court of General Sessions that court had jurisdiction over the offense charged against him, and therefore the writ of habeas corpus must be dismissed and the relator remanded to the warden of Sing Sing Prison, there to await the execution of the judgment of the law.