OF THE

## STATE OF ILLINOIS,

DELIVERED

## AT THE DECEMBER TERM 1848,

AT MOUNT VERNON.

---

THE PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* ALBERT G. CALDWELL, *v.* JOHN REYNOLDS.

*Motion for a peremptory Mandamus.*

The General Assembly passed a law providing for the division of a county and the formation of a new county from the same territory, to take effect on a majority of the votes being cast for such division : *Held*, that the law was not unconstitutional.

The General Assembly derives its powers from the people, subject only to the limitations and restrictions of the Federal and State Constitutions.

The Acts of the General Assembly are not necessarily absolute, but may be so framed as to depend upon some future event or contingency for taking effect.

Although the legislature may not divest itself of its proper functions or delegate its general legislative authority, it may still authorize others to do those things which it might properly, yet cannot understandingly, or advantageously do itself.

MOTION for a peremptory *mandamus* to John Reynolds, Recorder of Deeds for the county of Gallatin and State of Illinois, to require him to enter upon the records of said county certain deeds tendered to him for that purpose by

the Relator in this case.    The motion was predicated upon
certain facts set forth in the petition of the Relator, which
are substantially as follow :

That on the first Monday of August, 1847, Gallatin coun-
ty was included within certain limits defined by law and so
recognized; that by an Act of the General Assembly, approved
January 26, 1826, the county seat was located at Equality ;
that on said first Monday of August, there was an elec-
tion for public officers of said county, and among them a
Recorder; that at such election, one John Reynolds was duly
elected for the term of two years, &c., and was subsequent-
ly commissioned and qualified, and performed the duties of
said office at said Equality ; that by virtue of an Act of the
General Assembly, entitled *"An Act to divide the county of
Gallatin and to form out of the same the county of Saline,"*
approved Feb. 25, 1847, the electors of said county, by a
vote upon the question, cast a majority of their votes in
favor of the division of the county, and the said John Reynolds,
then being such Recorder, fell within the limits assigned to
Gallatin county by the provisions of said Act.

The petition then went on to allege that said Act was
unconstitutional and void, and that said Reynolds continued
to be the Recorder of the original county of Gallatin, not
having resigned his said commission ; that the Relator, be-
lieving him to be the proper Recorder of said original coun-
ty, presented certain deeds (describing them,) to him for
record, concerning certain lands lying within the limits of
said original county, and within the limits defined by said
Act as the county of Saline; that said Reynolds refused to
receive and record said deeds, as requested.

The Respondent answered the petition, and stated that
the Relator exhibited to him his petition for a *mandamus*
and notices of his intention to move for the same, addressed
to and served upon the counties of Gallatin and Saline by
filing the same with the acting clerks of the County Com-
missioners' Court; that he waived all preliminary process
in the case, and entered his appearance accordingly, and

submitted the question in controversy to the decision of the Court, in the same manner as if an alternative *mandamus* had been issued.

The facts stated in the petition were admitted by Respondent, but he further alleged, that on the day of said election, Shawneetown received a majority of the votes for the county seat of Gallatin, as divided; that the Respondent retained his office at Equality, the old county seat, awaiting the direction of the law ; that the County Commissioners of said Gallatin county thus newly formed, on the third day of October, 1848, vacated said Respondent's office and ordered a new election of Recorder for the county thus formed; that, at such election, he was elected Recorder of such county, but had not as yet qualified, nor acted as such, or resigned his original commission ; that the order aforesaid vacating said office was prior to the presentation of the deeds aforesaid for record ; and finally, that in consequence of all these proceedings, he was embarrassed and undecided as to what course to pursue, and therefore declined to record said deeds as requested by the Relator.

*H. W. Moore*, for the Relator.

The Court will entertain and decide this case upon the merits, as it is presented, without process of law. *The People* v. *Fletcher*, 2 Scam. 482; *The People* v. *Wren*, 4 Scam. 269.

The Court will so decide this case, involving as it does the constitutionality of a State law, in a matter wherein the mere recording of deeds is to be required to be done or not done. The first case in which the Supreme Court of the United States, after solemn investigation, declared a law of Congress to be unconstitutional, was one upon which arose the propriety of the delivery of a commission to a justice of the peace. *Marbury* v. *Madison*, 1 Cranch, 137.

The facts present the single question, whether John Reynolds, Recorder of Gallatin county, elected under its old organization, and whose commission has not expired, shall

continue to act as such Recorder, irrespective of the pretended Act of the General Assembly of Illinois, of February, 1847, for the creation of the county of Saline from a portion of such county of Gallatin.

From an examination of that Act, the Recorder of old Gallatin county should so record, as that Act is void.

I. Because it is in direct conflict with the Constitution existing at the time of its supposed enactment.

1. By the Constitution, "the legislative authority of this State shall be vested in a General Assembly," &c. By the Act cited, it is sought to be vested in the people of the county of Gallatin. See the parallel cases and Acts of Pennsylvania and Delaware, cited in the Western Law Journal, January and June numbers, 1848, [*Rice* v. *Foster*, and *Parker* v. *The Commonwealth*,] and the decisions of the Supreme Courts of those States, there reported, declaring those Acts unconstitutional.

2. By the terms of the Act in question, it is not an expression of the legislative will, but is to be operative only at the will of the people of the county, thereby enabling them to repeal the former solemn and positive Act of the General Assembly, mentioned in the application of the Relator, and is not a municipal law prescribed, &c. Ibid.; 1 Black. Com. 45-6.

3. Delegated authority cannot be delegated. 5 Peters, 390; 3 Peters' Dig., 275.

II. Because it is against the genius, the nature, and the spirit of the State Government, of our republican institutions, and of the guaranty of the United States' Constitution, and is revolutionary and destructive. Journals before cited; also, *Calder* v. *Bull*, 1 Peters' Cond. R. 174.

1. No State shall have other than a republican form of government. Art. IV. § 4, Const. U. S.

2. Frequent recurrence to fundamental principles of civil government is indispensable to its preservation. Art. VIII of the late Constitution.

3. Civil liberty requires a surrender of sundry original

rights.    1 Black. Com. 6, 125, 261; 1 Story's Com. 255; Law Journals before cited; Woodeson's Lectures; 1 Peters' Cond. R. 174.

4. To alter the form of government, a mode is authorized in article VII of the late Constitution of Illinois, and to effect the partial reform of government contemplated in the Act in question, would be revolutionary and anarchical, and subversive of the intention "to establish justice, promote the welfare, and *secure* the blessings of liberty," expressed in the preamble by the framers of that instrument.    See, also, the analogy to be drawn from the example mentioned in 1 Story's Com. 303; *Rice* v. *Foster*, decision in 1848 in Delaware, at the end, and at page 409, of the Law Journal.

III.    Two or three examples of similar Acts of this State, suffered to operate without question before a judicial tribunal, will not suffice to "sanctify error or perpetuate usurpation" in the government of this State; nor, in the language of the Supreme Court of Pennsylvania in 1848, in the case of *Parker* v. *The Commonwealth*, would they "justify us in declining to express the conclusion that the Legislature has transcended its authority."    See Story's Com. 390.

IV.    Nor will the doctrine, that in the creation of private corporations, the assent of the corporators is necessary to effect the organization, furnish an analogy upon which to predicate the necessity of a like assent subsequent to the enactment, the case of public corporations, as counties &c. Angell & Ames on Corp. 9, 25,-26.

V.    Whatever may be the case in other countries, in this there can be no doubt, that every Act of the Legislature, repugnant to the Constitution, is absolutely void, and it will be the duty of the Court to adhere to the Constitution, and to declare the Act null and void.    3 Peters' Dig. 555-6; 1 Peters' Cond. R. 183, 283, 308, 421; 1 U. S. Dig. 553, and the cases there cited; 1 Story's Com. 347, 349; Bacon's Abr. ("Statute," H.); Kent's Com. Lect. 14, p. 277.

VI.    A due regard to the permanence of our State Government, under the New Constitution, and to the tranquility and prosperity of those who live and are to live within its

influence, requires that the General Assembly should exer-cise the sole legislative power, except as specially permitted in that instrument; lest the practice should at last creep into the Legislature of waiving the exercise of their power, (under proper previous instruction,) to make absolute laws, and submitting every delicate measure, general or special, for the enactment of the people in their primary and aggregate capacity; thus convulsing them with frequent and exciting and angry elections, establishing a *"pure democracy,"* by degrees, with all its confusion and violence, and, without the forms newly prescribed, sapping and overthrowing the fabric of republican, representative government which the favored people of this State, with so much care, have recently established.

*R. F. Wingate,* for the Respondent.

1. The Legislature has the power to create, change, modify, or destroy municipal corporations. *The People* v. *Wren,* 4 Scam. 269.

2. That if the section of the Act submitting the division of the county of Gallatin to a vote of the people is unconstitutional, it does not follow that the whole Act is void and unconstitutional. *Edwards* v. *Pope,* 4 Scam. 465.

3. That the County Commissioners' Court had a right to vacate the office of said defendant, if he neglected or refused to move his office, with the records thereof, to Shawneetown, Shawneetown having been established as per Act, the county seat of Gallatin, according to said Act, see Rev. Stat. 431, § 5.

4. If defendant was not in office at the time the said deeds were presented to him for record on account of the order of County Commissioners' Court of Gallatin, vacating his office and ordering a new election, he had no right to receive and record the deeds mentioned.

5. No officer can hold an office for the discharge of a public duty, except by virtue of the law of the State, and the Act dividing the old county of Gallatin, abolished all county offices unless the same were perpetuated by Act of the Legislature.

The People *v.* Reynolds.

6. That the Supreme Court has not original jurisdiction in cases of this kind, see Constitution, Art. V. § 5.

7. The Constitution is a limitation on the Acts of the Legislature. *Edwards* v. *Pope*, 4 Scam. 469.

*T. G. C. Davis*, upon the same side.

1. The State Legislatures retain all the powers delegated to them by the State Constitutions, not expressly taken away by the Federal Constitution. *Calder* v. *Bull*, 1 Peters' Cond. R. 174. The State Legislature is as omnipotent as Parliament. *Mason* v. *Wait*, 4 Scam. 134.

2. The power of the Legislature to submit an Act incorporating a county to the vote of the people thereof, justified by that provision of the Constitution securing the right of trial by a jury of the vicinage. *The People* v. *Wren*, 4 Scam. 277, 281; Constitution of Illinois, 1818, Art. VIII. § 9; Rev. Stat. 38.

3. Contemporaneous construction. 1 Story's Com. Constitution, 390, 346; *The People* v. *Marshall*, 1 Gilm. 688.

The Act creating Franklin, Milton, &c., and the Act creating Marquette, submitted organization to the vote of the people. The Act creating Massac submitted the location of seat of justice to a vote of the people. And at the last session of the Legislature, an Act to enable the people of Randolph to locate the county seat, and other Acts of the same Legislature. The Constitution of 1847 was submitted to the people for their sanction.

The case of *Fitch* v. *Pinckard*, 4 Scam. 69, establishes the doctrine that the Legislature may delegate power under the Constitution.

*A. G. Caldwell*, *pro se*, in conclusion.

The arguments made in defence, aim at establishing the proposition that the powers of our State Government were as unlimited upon the subject of counties, as the powers of Parliament, not only in their nature, but in their object and the manner of their exercise, and thence deriving the validity of

The People v. Reynolds.

the law in controversy. This is the leading feature of the defence, which, with the incidental points thrown out in argument, I propose to examine.

I. The origin, nature, and efficacy of constitutional governments form a guide to the ascertainment of legislative powers, and the validity of the law in question.

1. Prior to all government, mankind are drawn together and governed by certain natural relations which, when embodied and expressed in the common will of a State, form the Constitution of that State.

2. Constitutions are therefore the organic law of a State, fixing the rights of the citizen and the powers of Government. 1 Story's Com. Con. U. S. 305–7.

3. As an organic law, it is unchanging, and above the conflicts of passion. 1 Story's Com. Con. U. S. § 339, (case in Peters' Digest,) Opinion by Ch. J. Marshall.

4. It binds all and each by its own force, and its powers can neither be altered or exercised by any part or member of the State, but must be exercised by the agents designated. 1 Story's Com. U. S. § 337.

II. The nature and powers of constitutional governments, their objects, and the manner of their exercise.

1. Constitutional polity in this country recognizes no other than representative governments with limited powers. Con. U. S. Art. —; see the various State Constitutions and Bills of Right.

2. This representation is employed not only by the State, but county governments. See the history of municipalities in Angell & Ames.

3. The State Government derives its existence from the Constitution; the counties derive theirs from the Constitution, and their organization from the State Government.

4. The counties are public corporations, owing their existence not to the corporation, but to the Constitution and Government.

III. The powers of the Government, then, are not unlimited upon the subject of the creation of counties.

1. By the theory of the British Constitution, the Parlia-

ment is the sovereignty of the State, creating the organic, and enacting the temporary law.

2.   By the theory of the American Constitution, the people are the source of *sovereign* power, and the Government comprised of co-ordinate departments, with powers supreme within the spheres prescribed by the organic law.   1 Peters' Cond. R. 182.

3.   By the one system, Parliament creates all law; but by the other, there are two kinds of legislation—one organic and the other temporary.

4.   Organic legislation is enacted by the people primarily—temporary legislation is enacted by the agents of the people, secondarily and subordinately to the organic law. The one is a fixed rule of action—the other temporary.   The one is prescribed to the Government, and the other by it.

5.  The legislative power of the State is limited by the nature of our State Constitution, and the restrictions thereby imposed.

1.   The legislative powers are vested in a General Assembly and in no other body.   Art. II, Sec. 1.

2.   This power is restrained by the express limitations in the Constitution.   2 Scam. 81.

3.   It is limited by the general objects mentioned in the preamble.   Preamble of State Const.

4.   It is limited by the spirit and genius of our institutions.   1 Peters' Cond. R. 174; Delaware decision.

5.   It is limited by the principles of reason and justice and the means employed.   2 Scam. 86.

6.   It is a warrant of power to the representative, beyond which he cannot go.

7.   It is limited by the forms of law.   2 Scam. 86.

V.   The Act repealing the old county organization and creating a new one does not fall within the powers thus delegated and limited.

1.   The power of the Legislature in creation of counties is absolute and confined to itself, and cannot be transferred.

2.   The power of the Legislature in passing laws is a unity of power and must be exercised as such; a representative sovereignty cannot be divided.

3.  By the Act in question the *creation* of the county of Saline is referred to the vote of part of the people, and is not an absolute and perfect law in itself for the purpose of division.

4.  The Act is to take effect upon a contingency, which is to be created by a vote of the people of the county.

5.  Such an Act does not fall within the class of Acts which may call for the assent of corporations.

6.  It is also distinguishable from those laws which create a body corporate, but leave to the corporators the power to prescribe the subordinate relations between themselves.

VI.   The rules of constitutional and statutory construction will support the view presented.

1.  The strict or more extended sense will be adopted, as it may best promote the purposes of government.   1 Story's Com. Const. U. S. 396.

2.  Every interpretation should relate to the great objects of government.   1 Story, 406.

3.  Inconvenience, not a rule which will be always operative.   1 Story, 410.

4.  If an Act be repugnant it is void, and will be so declared.   Peters' Dig. 556, §§ 85, 86, 87.

5.  Contemporaneous construction will not be adopted unless in conformity with the sense and spirit.   1 Story, 390; 2 Scam. 79.

The Opinion of the Court was delivered by

CATON, J.   The law, the constitutionality of which is questioned by this application, provides for the division of Gallatin county, incorporating a part of its territory into a new county, called Saline.   The Act goes on in detail, with all the various provisions necessary to effect the change, and then, in the tenth section, provides for an election, authorizing the people of that county to say, by their vote, whether they wished the division or not, and that the law should only go into operation in the event that a majority of the voters at such election desired a division.

To establish the unconstitutionality of this Act it is assumed, that instead of being a law finished and obligatory from the hands of the General Assembly, this is merely a bill

The People *v.* Reynolds.

prepared by that department of the Government, and submitted to the people of Gallatin county, to be by them passed into a law, or defeated at the polls. This assumption is not true in fact. The law, as passed, was complete and perfect, although its principal provisions were to take effect upon a contingency, the determination of which did not depend upon the exercise of legislative powers by the people; but upon an expression which they were authorized to make, rather in the execution than in the enactment of the law, an expression to be made in a legitimate and an ordinary way. To the General Assembly have the people delegated the legislative powers of the Government, only limited and controlled by the Federal and State Constitutions, and it is insisted that these powers cannot be delegated to any body of men or any portion of the people, upon the principle that delegated powers cannot be delegated. This maxim is true, unless the delegate is empowered to employ others. The extent to which this maxim should be applied to a legislator depends upon a proper understanding of legislative powers; upon a proper determination of what may legitimately be done in the exercise of those powers. It is easy to say that it is the business of the Legislature to make laws: but then we must inquire, what kind of laws may be made? Must they be full, complete, perfect, absolute, depending upon no contingency and conferring no discretion? This would be absolute legislation, exhausting legislative power on the subject matter of the law. We presume that no where has constitutional learning advanced so far as to assert this doctrine. For ourselves, in determining what is legitimate and proper legislation, we feel warranted in looking at the past to see what kind of laws legislative bodies have been in the habit of passing. Legislative power is not a new idea only sprung into existence at the formation of this republic, but it has been known and understood since the formation of society and the institution of civil governments; and its meaning is not changed by its introduction into the American Constitutions, although its exercise is there limited, restricted

and controlled, as well by their express provisions as by the genius of the governments of which they are the fundamental laws. If we take the action of all past legislators as determining what may and should properly be done in the exercise of legislative powers, we see that while they are bound to make the laws, yet those laws need not be absolute, nor make every provision for doing that which they may authorize to be done. While all must be done under their sanction, yet they need not do all, nor command all. A law may depend upon a future event or contingency for its taking effect, and that contingency may arise from the voluntary act of others. Of this class are all laws creating private corporations, and a very large proportion of the laws creating public or municipal corporations. The former must necessarily be submitted to the corporators for acceptance before they take effect, and this has been very usually done with the latter, especially in the incorporation of towns and cities, and not unfrequently of counties; and we have never heard it questioned before, that the Legislature might properly submit a law, creating either a private or a public corporation, to the acceptance of the corporators. All such laws are perfect and complete when they leave the hands of the Legislature, although a future event shall determine whether they can take effect or not. If we say that this is an unauthorized delegation of legislative power, we forget what is a proper and legitimate exercise of that power. If the saying be true, that the Legislature cannot delegate its powers, it is only so in its most general sense. We may well admit that the Legislature cannot delegate its general legislative authority; still it may authorize many things to be done by others which it might properly do itself. All power possessed by the Legislature is delegated to it by the people, and yet few will be found to insist, that whatever the Legislature may do, it shall do, or else it shall go undone. To establish such a principle in a large State would be almost to destroy the Government. The Legislature may grant ferry licenses, or it may lay out roads and specify their metes and

bounds, and yet, who will doubt that it may delegate this power to others, either by general or special laws? So, also, it may pass all the laws requisite for the government of a particular city or township, or school district, and who will doubt the propriety of its authorizing this to be done by the people within the limits of the city, town or district, by their local representatives, or even directly. This is making laws, and laws, too, of as binding efficacy as if passed directly by the Legislature. They are dependent upon the legislature for their vitality and force, though the act of incorporation, or law under and by virtue of which they are made. Necessarily, regarding many things especially, affecting local or individual interests the Legislature may act either mediately or immediately. We see, then, that while the Legislature may not divest itself of its proper functions, or delegate its general legislative authority, it may still authorize others to do those things which it might properly, yet cannot understandingly or advantageously do itself. Without this power legislation would become oppressive, and yet imbecile. Local laws almost universally call into action, to a greater or less extent, the agency and discretion, either of the people or individuals, to accomplish in detail what is authorized or required in general terms. The object to be accomplished, or the thing permitted may be specified, and the rest left to the agency of others, with better opportunities of accomplishing the object, or doing the thing understandingly. In this way have the seats of justice of most of the counties in the State been located. Indeed, the old county seat of this very county was fixed by five persons named in an Act of the Legislature, and under authority therein delegated to them. Session Laws of 1826, p. 77. If the Constitution has been violated by the passage of the law now in question, then was that location by the persons named without its sanction. If, by declaring this law invalid, we restore old Gallatin to her original boundaries, then by the same decision do we unsettle the old county seat, because it was located in pursuance of authority dele-

gated by the Legislature to individuals.  We should say, be-
cause the Legislature might have named the place, it should
have done so, and in no other way could it have been con-
stitutionally selected.

The only cases to which we have been referred in the
least countenancing the position assumed by the Relator ap-
pear to have been decided by the Supreme Courts of Penn-
sylvania and Delaware, and noticed in the January and June
No's (1848,) of the Western Law Journal.  These we feel
called upon to notice, and it is to be regretted that we have
not full reports of the cases.  They appear to be identical
in their facts and decisions, and the same course of reason-
ing is pursued by both Courts.  The first is *Parker* v. *The
Commonwealth,* noticed in the January No.  There it ap-
pears that the Supreme Court of Pennsylvania, by a majority
of three judges to two, held that an Act entitled " *An Act
authorizing the citizens of certain counties to decide by ballot
whether the sale of vinous and spirituous liquors should be
continued in said counties,*" was unconstitutional.  It ap-
pears that by other laws of that State, the sale of such
liquors is prohibited, except by persons obtaining a license
from the Court of Quarter Sessions.  The Legislature then
passed the law complained of, authorizing the people of cer-
tain counties to determine by their vote, whether the sale
of spirituous liquors should be altogether prohibited in these
counties, or in other words, whether any licenses should be
granted.  In both cases it was admitted that the laws did
not contravene any express provision of their State Consti-
tutions, but then it was said that they were invalid because
they palpably violated the principles and spirit of their con-
stitutions and tended to subvert their republican forms of
government.  And how were their republican governments
to be subverted?  By allowing the people of the county to
determine by ballot whether or not intoxicating drinks should
be sold in the county.  Here they perceive an attempt by
the Legislature to establish a pure democracy, from which,
we are informed, they think greater danger is to be appre-

hended than from an absolute monarchy. Such an attempt, it is supposed, is revolutionary in its tendency, and subversive of a republican government.

Besides the objection that it is inconsistent with the genius of a republican government to submit such a question to the decision of the people, the maxim before alluded to, that delegated power cannot be delegated, was invoked and relied upon by these Courts. In Delaware, the Court say: "The powers of government are trusts of the highest importance; on the faithful and proper exercise of which depend the welfare and happiness of society. These trusts must be exercised in strict conformity with the spirit and intention of the Constitution by those with whom they are deposited; and in no case whatever can they be transferred or delegated to any other body or persons; not even to the whole people of the State; and still less to the people of a county. It is a plain proposition of law, that a power or authority vested in one or more persons, to act for others, involving in its exercise judgment and discretion, is a trust and confidence reposed in the party, which cannot be transferred or delegated. The making of laws is the highest act of sovereignty that can be performed in a free nation; and therefore, the legislative power may be truly said to be the supreme power of a State. Its exercise requires superior intellectual faculties, improved by study and experience; although it seems to be a common notion with many pretended advocates of popular rights at the present day, that every man is instinctively fitted to be a member of the Legislature."

We cannot concur in the application to legislative powers, of the maxim relied upon to the extent asserted by that Court. The apprehension of disastrous consequences which might result from an unwise use of a discretion vested in the people or any portion of them, seems to have led the Court to lay down a principle, which certainly cannot, in our judgment, be maintained. No exception is made to the rule which is asserted, that legislative power is a trust which cannot be transferred or delegated. If this be true, it neces-

sarily follows, that the Legislature can authorize others, either the people, the Courts or individuals to do nothing which it might do itself. While we may concur with that Court in deprecating and condemning the fulsome effusions and unprincipled conduct of the demagogue, whose only merit consists in an artful ability to deceive the people and flatter the public vanity; ever persuading them that they can do no wrong; approving, defending and advocating every popular prejudice, even at the sacrifice of his own judgment, that he may acquire an influence and use their power for selfish purposes;—who is even willing to ride upon the whirlwind that hastens to destruction, for the giddy pleasure of guiding the storm, we ought not to allow such occasional abuse of the public confidence or credulity, to impel us to the other extreme, and conclude that the people are not safe repositories of any power—that they cannot judiciously exercise any discretion.

We have before attempted to show that the Legislature may, to a certain extent, authorize others to do that which it might properly do itself; and as its powers are all derivative, it may delegate at least some of its delegated powers, the right to do which is also denied in terms by the Court in Pennsylvania; and yet the authority to do this, we apprehend, is clearly recognized by the latter Court in the case then before it.

In the absence of all legislation on the subject, the right of all persons to sell spirituous liquors is undoubted. A law was then passed, prohibiting the sale of such liquors by all, except such persons as should obtain a license from the Court of Quarter Sessions. Now the Legislature might, had it seen fit, have exempted certain persons by name from the operation of the law by authorizing them still to sell liquor, but instead of doing so, it delegated that power to the Court of Quarter Sessions by authorizing it to grant licenses, upon terms prescribed by the law, or by its discretion, or without terms, which it is immaterial for our present purpose. This delegation of authority is not censured by the Court, nor is its propriety questioned. We do not know whether it is left

The People *v.* Reynolds.

to the discretion of that Court to determine whether it would grant any licenses or not. At any rate, that might have been done with equal propriety; and if that had been done, then had the Legislature delegated the very power to one man or a few men, which it was determined could not be delegated to many men,—to the voters of the county. The same power might with equal propriety have been delegated to—or, if the expression is preferred, the same jurisdiction might have been conferred upon some individual by name, which was given to the Court, and if they could confer it upon one man, why not upon more—the voters of the county? Had this authority been given to the Court instead of the voters, we are compelled to believe that no complaint of its constitutionality would have been entertained, and yet there would have been as much a delegation of powers in one case as in the others. To prove this needs no argument. If, by leaving this question to the people, the republican form of government is to be overturned, and its principles subverted by a miniature democracy, may not the same awful calamities be apprehended from a miniature monarchy? If, by giving this power to the people, the one is created, then by conferring it upon one individual, we have the other. It seems to us that the latter is quite as inconsistent with the genius of a republic as the former and as subversive of its principles, although it is manifest that there is a wide difference of opinion upon the political question, as to which of these extremes we should first incline.

It is the substance of the thing which we should look at, more than the form. It matters not whether this question is submitted to the people, the Court or individuals, by a separate Act or by the original law prohibiting the sale, and authorizing the granting of licenses, and we repeat that we apprehend the constitutionality of a clause would never have been questioned, authorizing the Court of Quarter Sessions to determine by its vote or order, whether any licenses should be granted in the county or not. The answer is, that in the case supposed, the Court would only have been executing a law, vesting it with a discretion, and this we

conceive is the true answer to the objection which was urged against the laws in question. We are unable to appreciate the danger or impropriety, either in a political or a legal view, of allowing the Legislature to vest a discretion of this kind depending upon many local circumstances for its proper exercise, either in the people or a Court, either of whom may, in truth, be much better qualified to exercise it understandingly, than the Legislature itself. The application made of the maxim that delegated power cannot be delegated, would lead to most embarrassing results, and would have a much more certain tendency to despotism, than the action complained of. How those Courts reconciled their use of this maxim, with the powers universally conferred upon municipal corporations, we are not fully advised. Such corporations are always delegated with authority to pass laws, local in their character, it is true, but universal in their application within their jurisdictions;—laws precisely such as those in question. If in Pennsylvania and Delaware, there are no incorporated towns or cities, authorized to pass and enforce laws prohibiting the sale of spirituous liquors, and many other acts lawful in themselves, within their limits, we venture the assertion, that those States stand alone in this respect; and in other States, at least we imagine it has never been questioned, that such powers may well be conferred. It may be true, that this authority is usually conferred upon a board of trustees or city council, but that does not affect the question so far as a delegation of authority is concerned. This authority might as rightfully be conferred upon the mayor alone, or upon the voters of the city, as upon a common council. It is presumed that there is no constitutional provision, determining upon how many or upon how few, the Legislature may confer this power. That must be left to legislative discretion. If the voters of a city or town may be authorized to determine, either directly by their vote, or by their local representatives whether spirituous liquors shall be sold within their precincts, then surely the voters of a county may be allowed to do the same. Upon the question of authority it can matter little, whether the terri-

The People *v*. Reynolds.

tory be greater or less, or whether it be densely or sparsely populated.   Both counties and cities are municipal corporations and vested with greater or less powers, according to the discretion of the Legislature.    Both of these as well as other less important, perhaps, but similar corporations, are usually vested with power to levy taxes, often by a direct vote of the people, and collect them, which has been well said to be one of the highest acts of sovereignty, and yet this authority is admitted to be legitimate by the Court in Delaware, in the very case, because it is said to be not the making, but merely the execution of a law.   If to say that a certain tax shall or shall not be assessed and collected, is not legislation, then we are unable to see how it is the making of a law to say that spirituous liquors shall or shall not be sold.    And yet how variously different men may look upon the same thing.    The Supreme Court of Delaware says : "No ingenuity can discover the shadow of a similitude between the Act of the 19th of January, 1847, (the unconstitutional law,) and any part of the school law.   To say that the authority given to the school voters—to members of a corporation, to determine whether a tax shall be laid or not, is a grant of legislative power, is an abuse of language." Pardon our simplicity when we inquire where they get that *authority* if it is not *granted* them by the Legislature ?   Who else *gives* it them ?    The majority may vote this tax upon the minority against their consent.    This we had supposed was not an inherent and natural right, but could only be delegated by the sovereign power of the State.   This, the same Court says, is vested in the Legislature, which might have imposed the tax specifically by a direct law.   If all of this be true, we are unable to perceive the abuse of language anticipated ; nor do we think it requires any extraordinary degree of ingenuity not only to "discover the shadow of a similitude between the" two laws, but a very striking resemblance in their principles.

Without pursuing the subject further, we think enough has already been said, to show that the Legislature may delegate authority, either to individuals or to bodies of people,

to do many important legislative acts, not only similar to that authorized by the law, the validity of which is here question‑ ed, but also others of a more important, and, upon principle, of a much more questionable propriety ; but in doing this it does not divest itself of any of its original powers.    It still possesses all the authority it ever had.    It is still the reposi‑ tory of the legislative power of the State.

Entertaining no doubt of the constitutionality of the law authorizing the division of Gallatin county, this application for a *mandamus* will have to be denied.

However clear this may appear to us, and however novel the principle contended for may have been, still two deci‑ sions made by tribunals of as great respectability as the Su‑ preme Courts of Pennsylvania and Delaware, and upon questions so very like this, may well have justified those whose interests and judgments inclined them to disapprove of the Act complained of, in doubting, or denying its consti‑ tutionality.    The question, however, is now settled, and we entertain no doubt that all will cheerfully submit to the pro‑ visions and operation of the law.

*Application denied.*