(No. 48290.—)

ROBERT R. STOFER, Appellee, v. MOTOR VEHICLE CASUALTY CO. *et al.*, Appellants.—JOSEPH N. FOX, Appellee, v. THE HARTFORD FIRE INSURANCE CO. *et al.*, Appellants.

*Opinion filed Oct. 5, 1977.—Rehearing denied Nov. 23, 1977.*

Conklin, Leahy & Eisenberg (Daniel J. Leahy and Franklin A. Nachman, of counsel) and Keck, Cushman, Mahin & Cate (Joseph Keig, Jr., Bennet B. Harvey, Jr., and Brock R. Landry, of counsel), of Chicago, for appellants Motor Vehicle Casualty Company, Harford Fire Insurance Company and United States Fidelity and Guaranty Company.

William J. Scott, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellant the Department of Insurance.

Sidney Z. Karasik and Max A. Abrams, of Chicago, for appellee Robert R. Stofer.

Calvin K. Hubbell, of Chicago, for appellee Joseph N. Fox.

MR. JUSTICE CLARK delivered the opinion of the court:

This is a consolidated, direct, interlocutory appeal pursuant to our Rules 302(b) and 308 (58 Ill. 2d Rules

302(b), 308) from decisions of the circuit court of Cook County holding sections 397 and 401 of the Insurance Code of 1937 (Ill. Rev. Stat. 1975, ch. 73, pars. 1009, 1013) invalid on the grounds that the power thereby granted the Director of Insurance to prescribe uniform insurance contracts (including contractual limitations on the time within which suits may be brought against the insurer by the insured) violated the separation of governmental branches and powers mandated by section 1 of article II of our constitution (Ill. Const. 1970, art. II, sec. 1). We reverse, because we conclude that the powers thus exercised by the Director of Insurance are of the type which the legislature could (and did) properly lodge in an executive officer.

Section 397 of the Insurance Code of 1937 (Ill. Rev. Stat. 1975, ch. 73, par. 1009) provides:

> "The Director of Insurance shall promulgate such rules and regulations as may be necessary to effect uniformity in all basic policies of fire and lightning insurance issued in this State, to the end that there be concurrency of contract where two or more companies insure the same risk."

Section 401 (Ill. Rev. Stat. 1975, ch. 73, par. 1013) further provides:

> "The Director *** shall have the power
> (a) to make reasonable rules and regulations as may be necessary for making effective such laws."

Pursuant to that authority, the Director had promulgated Rule 23.01, which prescribed "the Standard Policy for fire and lightning insurance of the State of Illinois" and prohibited the making, issuance, and delivery of insurance contracts and policies which did not conform to the standard policy.

The standard policy includes the following clause:

> "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or

equity unless all of the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."

The plaintiffs in these two actions, Robert Stofer and Joseph Fox, and the defendant insurance companies entered into temporary contracts of fire insurance ("binders") which incorporated the above-quoted standard clause.

Stofer allegedly suffered a loss on October 29, 1972. On December 18, 1972, Stofer submitted a written claim to his insurer, accompanied by a sworn statement of "proof of loss." On May 22, 1973, the insurer rejected the claim, and on November 5, 1973, Stofer filed suit against his insurer in the circuit court of Cook County. As an affirmative defense, the insurance company pleaded the expiration of the 12-month period provided for such suits in the contract.

Fox's insured property allegedly was exposed to shock waves from a nearby explosion on March 6, 1972, and collapsed on June 13, 1972. Fox's insurers rejected his claim on or about October 2, 1972, and Fox filed suit against them on December 3, 1973. Fox's insurers raised the same affirmative defense as was raised against Stofer.

The circuit court struck the affirmative defense in each case on the ground that the 12-month limitation on the time for bringing suit following a loss had been prescribed by the Director of Insurance pursuant to an unconstitutional delegation of authority to him by the legislature. The circuit court consolidated the cases and rendered the findings necessary to certify the constitutional question for interlocutory appeal (see 58 Ill. 2d R. 308(a)), and we granted the insurance companies' motion for direct appeal to this court pursuant to our Rule 302(b).

It is clear that the circuit court did not decide whether the insurance companies had, by their conduct, waived the

12-month limitation. That issue is not before us, and our opinion should not be interpreted as expressing any view on that question.

The only question brought to us from the trial court is the constitutionality of the promulgation of Rule 23.01 by the Director of Insurance. Nonetheless, we need not address the constitutionality of the Director's promulgation of Rule 23.01 if either the enabling statute or the rule may be construed to avoid the constitutional question.

The insurance companies thus claim that the terms imposed by Rule 23.01 are enforceable between the parties even if the Director acted unconstitutionally in imposing those terms. They argue that the terms imposed by Rule 23.01 are no different than any other contractual terms, and thus bind the parties which have agreed to them. We disagree. These terms were in no way bargained for by the parties, but rather, were imposed *in haec verba* as a matter of law. This particular term obviously is for the sole benefit of the insurer, and only benefits the insured to the extent that (like any term which benefits the insurer) there is a possibility that it may tend to lower insurance rates. Accordingly, if the law imposing the term is invalid, its enforceability would be called into serious question. The contractual form of the underlying obligation thus does not prevent us from reaching the constitutional question.

Plaintiffs also suggest a ground for our decision which stops short of addressing the constitutional question. They claim that the legislature did not delegate to the Director of Insurance the power to prescribe the time limit at issue here. That contention does not withstand scrutiny of the history of Rule 23.01 and its counterparts in other jurisdictions.

The predecessor of Rule 23.01 was not merely another administrative rule, but was itself part of the Insurance Code. When the legislature first enacted the

Insurance Code of 1937, section 397 of the Code incorporated by reference the New York standard fire insurance policy. After the insurance industry proposed several revisions of that policy, Illinois amended section 397 to eliminate the reference to the old New York standard policy and to give the Director of Insurance the power to provide by rule for "concurrency of contract" among insurers insuring the same risk. (1945 Ill. Laws 950, Ill. Rev. Stat. 1945, ch. 73, par. 1009.) It is thus clear to us that the legislature intended the rule-making authority of the Director of Insurance to replace the old New York standard policy as the substantive basis for the regulation of fire insurance. While it would have been more artful for the legislature to have expressly stated that the Director's rule-making authority included the authority to promulgate a standard policy, the absence of such a statement does not indicate a contrary intent.

Soon after being given this rule-making authority, the Director used it to promulgate a standard policy pursuant to Rule 23.01. For over 30 years the legislature has not seen fit to overturn the Director's contemporaneous interpretation of the authority given him in 1945. We decline to do so today.

We now address the constitutional question. The separation of powers and branches of government raises extremely complex and subtle questions about the nature and function of government itself. (See generally *People v. Reiner* (1955), 6 Ill. 2d 337, 342-43.) As attitudes toward the functions of government have changed over the years, so have our interpretations of how government is to perform and allocate those functions among its various branches. In the interest of flexibility, therefore, perhaps a little *stare decisis* has been lost. (Compare, *e.g., People v. Roth* (1911), 249 Ill. 532, and *Brown v. City of Chicago* (1969), 42 Ill. 2d 501, with *People ex rel. Moore v. J. O. Beekman & Co.* (1931), 347 Ill. 92, and *People v. Tibbitts*

(1973), 56 Ill. 2d 56.) We are reminded of Mr. Justice Jackson's memorable expression of the frustration of dealing with questions such as these:

"Just what our forefathers did envision, or would have envisioned had they foreseen modern conditions, must be divined from materials almost as enigmatic as the dreams Joseph was called upon to interpret for Pharaoh. A century and a half of partisan debate and scholarly speculation yields no net result but only supplies more or less apt quotations from respected sources on each side of any question." *Youngstown Sheet & Tube Co. v. Sawyer* (1952), 343 U.S. 579, 634-35, 96 L. Ed. 1153, 1199, 72 S. Ct. 863, 869-70 (Jackson, J., concurring).

Fox and Stofer argue that, while it may be clear that the Director can promulgate reasonable regulations to effectuate the legislature's desire to provide "concurrency of contract" and while the legislature itself could have enacted a uniform one-year limit on the time for actions against the insurer under the contract, the legislature could not give the Director the power to prescribe such a limit. They reason that limiting a person's access to judicial remedies is a "legislative act" which only can be done by statute and not by regulation, and that, even if it could be done by regulation, the enabling statute does not set forth sufficient standards to cabin the administrator's discretion in promulgating such a regulation.

We hold that the legislature may delegate to the Director the power to prescribe a uniform insurance contract containing a clause limiting the time during which actions may be brought by the insured against his insurer. This term is but another provision of the standard policy, one of many that may effectively bar relief to the insured.

We no longer find the legislative-act administrative-act distinction helpful to a reasoned analysis of the separation

of powers and branches of government mandated by our constitution in the context of statutes enabling administrators to promulgate regulations prescribing rights and duties under a comprehensive regulatory statute. Rather, we think this case may be more appropriately analyzed under the second issue presented by Fox and Stofer, *i.e.*, whether the legislature provided sufficient guidance to limit the powers granted the Director.

Many of our early cases adhere to the notion that administrative rule making basically is interstitial, interpolating among the standards set by the legislature to fill in details and create a comprehensive regulatory scheme. (See, *e.g.*, *People ex rel. Moore v. J. O. Beekman & Co.* (1931), 347 Ill. 92; *Mitchell v. Lowden* (1919), 288 Ill. 327; *People v. Roth* (1911), 249 Ill. 532, 535-36.) Subsequent experience, however, with the administrative regulation of highly complex and technical subjects leads us to conclude that the administrative task necessarily differs substantially from the traditional model. In determining to regulate a particularly complex subject, the legislature frequently intends only to eliminate a particular class of abuse from an otherwise lawful and valuable activity. In many cases, it simply is impractical for legislators to become and remain thoroughly apprised of the facts necessary to determine which aspects of that activity are harmful and how they might be modified. (*R. G. Lydy, Inc. v. City of Chicago* (1934), 356 Ill. 230, 235; *People v. Roth* (1911), 249 Ill. 532, 535.) In most cases, therefore, the administrator's task is not merely to interpolate among broadly stated legislative prohibitions, but, rather, to extrapolate from the broad language of his enabling statute, and, using the regulatory tools given him by the legislature, to deal with the problems which the legislature sought to address.

To require the legislature continually to determine the specific actions which ought to be prohibited and those

which ought to be required would be to render the regulation of many matters hopelessly inefficient. Yet the demands of administrative efficiency are not dispositive of the mandate of our constitution. A structure which enables government to serve its citizens more efficiently also may enable it to oppress them more efficiently. The separation of powers and branches of government mandates a distribution of authority which may, on occasion, impede one of the branches in attempting to address a particular problem. This impediment is necessary, however, to impede the abuse of power by any one particular branch acting alone.

At least one commentator thus views the question of separation of powers as being limited to preventing the oppression of one branch of government by another. (See 1 F. Cooper, State Administrative Law 16 (1965).) We find that analysis inadequate. It is not enough that the other branches of government remain unimpeded in their ability to remedy an abuse of power by the offending branch. Rather, the requirement of affirmative authority from more than one branch of government is itself an important protection against the misguided acts of a particular bureaucracy. (See *Field v. People ex rel. McClernand* (1839), 3 Ill. 79, 83; accord, *Hill v. Relyea* (1966), 34 Ill. 2d 552, 557.) It is for this reason that our earlier cases emphasized the need for intelligible legislative standards to guide administrative rule making. See *Hayes Freight Lines, Inc. v. Castle* (1954), 2 Ill. 2d 58, 65; *People ex rel. Stamos v. Public Building Com.* (1968), 40 Ill. 2d 164, 174; *Vallat v. Radium Dial Co.* (1935), 360 Ill. 407, 410.

Without sufficient statutory directions against which to compare administrative regulations, the mere existence of judicial review is not a meaningful safeguard against administrative abuses. "The law is not a 'brooding omnipresence in the sky,' *** and it cannot be drawn from

there like nitrogen from the air." (*Textile Workers Union v. Lincoln Mills* (1957), 353 U.S. 448, 465, 1 L. Ed. 2d 972, 985, 77 S. Ct. 912, 925 (Frankfurter, J., dissenting, and quoting Justice Holmes' dissent in *Southern Pacific Co. v. Jensen* (1917), 244 U.S. 205, 222, 61 L. Ed. 1086, 1101, 37 S. Ct. 524, 531.) Thus, unless found in the statute, the restraints which the judiciary is to apply to safeguard against the abuse of discretion in administrative rule making simply do not exist. See generally G. Braden & R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 115 (1969); *cf. City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 183-84 (adequacy of standards for and direct judicial review of administrative sanctions).

Accordingly, we find that the view which has developed through the decisions of this court in recent years requires that the legislature, in delegating its authority provide sufficient identification of the following:

(1) The *persons* and *activities* potentially subject to regulation;

(2) the *harm* sought to be prevented; and

(3) the general *means* intended to be available to the administrator to prevent the identified harm.

We recognize that the term "sufficient identification" itself is not free from ambiguity and will have to receive additional content from its application to particular facts and circumstances. The following principles should guide such applications: (1) The legislature must do all that is practical to define the scope of the legislation, *i.e.,* the persons and activities which may be subject to the administrator's authority. This effort is necessary to put interested persons on notice of the possibility of administrative actions affecting them. (See *People ex rel. Duffy v. Hurley* (1949), 402 Ill. 562, 567-68.) Of course, the complexity of the subject sought to be regulated may put

practical limitations upon the legislature's ability to identify all of the forms the activity may take. (See *Board of Education v. Page* (1965), 33 Ill. 2d 372, 375.) (2) With regard to identifying the harm sought to be prevented, the legislature may use somewhat broader, more generic language than in the first element. It is sufficient if, from the language of the statute, it is apparent what types of evil the statute is intended to prevent. (See *People v. Reynolds* (1848) 10 Ill. (5 Gilm.) 1, 14.) (3) Finally, with regard to the means intended to be available, the legislature must specifically enumerate the administrative tools (*e.g.,* regulations, licenses, enforcement proceedings) and the particular sanctions, if any, intended to be available. If sanctions are provided, the legislature also must provide adequate standards and safeguards such as judicial review of the imposition of those sanctions. (*City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 182-84; see also *Union Cemetery Association v. Cooper* (1953), 414 Ill. 23, 38.) In the instant case, we find that the rule-making authority provided in sections 397 and 401 of the Insurance Code meets the test which we have today articulated, because the legislature has adequately identified both the harm sought to be remedied and the means intended to be available to prevent such harm. (The scope of the regulation is not at issue.)

First, the legislature has indicated that it intended to prevent a chaotic proliferation of disparate fire insurance policies. But that is not all. Indeed, had the legislature left the Director completely free to promulgate a "reasonable" uniform fire insurance policy, we would have serious doubts as to the constitutionality of such uncabined discretion. (See *Wylie v. Phoenix Assurance Co.* (1933), 42 Ariz. 133, 22 P.2d 845; *cf. Sangamon County Fair Association v. Stanard* (1956), 9 Ill. 2d 267, 275. But see *Board of Ins. Com'rs. v. Carter* (Tex. Civ. App. 1950), 228 S.W.2d 335, 339.) We find, however, that the legislature

has provided substantial additional standards defining the harm sought to be prevented and thereby limiting the Director's discretion. Section 143(2) of the Insurance Code (Ill. Rev. Stat. 1971, ch. 73, par. 755(2)) provided in part:

"The Director shall require the filing of all policy forms issued by any company transacting the kind or kinds of business enumerated in Classes 2 and 3 [fire insurance] of section 4. He may require, in addition thereto, the filing of any generally used riders, endorsements, application blanks and other matter incorporated by reference in any such policy or contract of insurance. Companies that are members of an organization, bureau or association may have the same filed for them by organization, bureau or association. If the Director shall find from an examination of any such policy form, rider, endorsement, application blank or other matter incorporated by reference in any such policy so filed that *it violates any provision of this Code, contains inconsistent, ambiguous or misleading clauses, or contains exceptions and conditions that will unreasonably or deceptively affect the risks that are purported to be assumed by the policy,* he shall order the company or companies issuing such forms to discontinue the use of the same." (Emphasis added.)

The policies governed by section 143 inevitably incorporate the underlying contract. The Director's discretion under sections 397 and 401 in promulgating that contract thus is limited by the terms of section 143. The requirements that the terms be consistent, unambiguous, and not contain "exceptions or conditions that will unreasonably or deceptively affect the risks that are purported to be assumed by the policy" are affirmative requirements of fairness to and protection of the persons who purchase insurance. These standards identify the harm sought to be prevented in terms not unlike those which we have found adequate on several previous occasions. (*Cf., e.g., People v. Avery* (1977), 67 Ill. 2d 182 (standards for

designating controlled substances); *Hill v. Relyea* (1966), 34 Ill. 2d 552, 556 (discharge of mental patients "as the welfare of such person and the community may require"); *Board of Education v. Page* (1965), 33 Ill. 2d 372, 376 ("specifications for the minimum requirements *** which will conserve the health and safety of the pupils"); *People ex rel. Colletti v. Pate* (1964), 31 Ill. 2d 354, 359 ("diminution of sentences on account of good conduct"); *City of Evanston v. Wazau* (1936), 364 Ill. 198, 204 ("sufficiency of the equipment required by this act for safe operation on public highways").) We therefore hold that the legislature has sufficiently identified both the harm sought to be prevented by the Director's rule-making power and the means (standard terms which comply with section 143) intended to be available to remedy that harm.

For the foregoing reasons, the orders of the circuit court of Cook County striking the insurance companies' affirmative defense are reversed, and the causes are remanded to the circuit court of Cook County for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*