CORONET INSURANCE COMPANY, Plaintiff-Appellee, v. JOHN E. WASHBURN, Director of Insurance, Defendant-Appellant.

First District (2nd Division)   No. 1—89—0981

Opinion filed July 24, 1990, *nunc pro tunc* June 5, 1990.

634

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of Chicago, of counsel), for appellant.

Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Alvin R. Becker and Timothy M. Kelly, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant, John E. Washburn, Director of Insurance of the State of Illinois (Director), appeals from the circuit court's order denying his motion to dismiss the complaint and dissolve a temporary restraining order, and permanently enjoining him from enforcing Department of Insurance (Department) Rule 919.60(d). The issues presented are whether the Director possesses the statutory authority to promulgate an amendment to an administrative rule prohibiting an insurance company from requesting an insured to submit to a lie detector test; the regulation is void for vagueness; and the rule was promulgated in violation of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1987, ch. 127, par. 1002 *et seq.* (IAPA)).

Plaintiff, Coronet Insurance Company (Coronet), is licensed to do certain insurance business in Illinois. Coronet filed a verified complaint for a declaratory judgment and injunctive relief on February 8, 1989, alleging that the Director promulgated amended Rule 919.60(d)[1] in violation of "the purpose, intent and spirit of the Administrative Procedures [*sic*] Act" because the amendment was adopted without requisite notice and public hearings. The complaint also alleged that the amendment was constitutionally void for vagueness because no prudent and reasonable person would know what conduct is prohibited, and that the Director promulgated the amendment without legislative authority. Public hearings admittedly were held and Coronet was expressly invited to attend; however, Coronet claims, the amend

---

[1]Prior to the January 11, 1989, Rule 919.60(d) of the Department of Insurance provided in pertinent part:

"No company shall require any insured to submit to a polygraph or other similar type examination as a condition precedent to payment of a claim." (50 Ill. Adm. Code §919.60(d) (1985).)

The amendment to Rule 919.60(d), made effective January 11, 1989, now provides that "No company shall request or require any insured to submit to a polygraph examination."

ment ultimately promulgated by the Director is not the same as that previously published in the Illinois Register, because it did not contain the word "request." Coronet prayed that the court (1) adjudge and declare invalid Rule 919.60(d); (2) adjudge and declare that Rule 919.60(d) does not prohibit plaintiff from "suggesting" polygraph examinations for its insureds; and (3) temporarily and preliminarily enjoin its enforcement pending a full and final determination.

At the hearing on the request for a temporary restraining order, the Director asserted that Coronet's exhibit did not reflect the amendments the Director had published in the Illinois Register pursuant to the IAPA. The circuit court noted that Coronet's complaint was verified and that the Director's counsel could not answer it merely by making representations to the court; therefore, it issued the temporary restraining order without bond and gave the Director seven days in which to reply.

The Director subsequently filed a section 2—615 (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) motion to dismiss and dissolve the temporary restraining order, arguing that Coronet (1) had failed to state a cause of action; (2) had not presented a "fair question" entitling it to relief; and (3) did not have any "right" which entitled it to a temporary restraining order. The affidavit of defendant's attorney, Timothy Cena, was attached to the motion which stated that prior to the amendment, the Director properly followed all pertinent statutory procedures, giving the details of alleged compliance, which corroborated representations Director's counsel previously made to the court.

Following a hearing on the Director's motion to dismiss, the circuit court denied the motion and ruled that the Director exceeded his lawful authority in promulgating Rule 919.60(d). The circuit court did not rule on Coronet's constitutional argument that the amendment was void for vagueness nor on Coronet's argument that the amendment was promulgated in violation of the IAPA. The court permanently enjoined the Director from enforcing the January 11, 1989, amendment and found no just reason to delay enforcement or appeal. The Director appeals.

I

The Director urges error in the circuit court's finding that, in promulgating the amendment, he had exceeded the authority vested in him by the General Assembly, because sections 154.5 and 154.6 of the Insurance Code (Ill. Rev. Stat. 1987, ch. 73, pars. 766.5, 766.6) address improper claims practice and designate the general harm the legislature intended to prevent and provide him with the authority to

promulgate the rule at issue here. The Director concedes that polygraph tests are not specifically mentioned in the language, but that by identifying improper claims practices as an area to be regulated, the General Assembly gave him authority to make judgments as to the specific rules and regulations needed to implement the statute. He identifies subsections 154.6(f) and 154.6(h) as his authority for promulgating Rule 919.60(d).[2]

■ An administrative agency may enact rules and regulations as limited by the authorizing statutory language. (*Rivera v. Department of Public Aid* (1985), 132 Ill. App. 3d 213, 217, 476 N.E.2d 1143; *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 551, 370 N.E.2d 223.) An administrative rule carries with it the same presumption of validity as a statute. (*Rivera*, 132 Ill. App. 3d at 217; *Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 58, 387 N.E.2d 320.) A rule which is consistent with the spirit of the statute and furthers its purpose will be sustained. *Rivera*, 132 Ill. App. 3d at 217.

■ Our supreme court, in *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 369 N.E.2d 875, required that the legislature, in delegating its authority, set forth sufficient identification of "the *harm* sought to be prevented." (Emphasis in original.) (*Stofer*, 68 Ill. 2d at 372.) Anticipating that an ambiguity might arise in applying the aforementioned criterion, the court noted that the legislature may use somewhat broad and generic language with regard to identifying the harm sought to be prevented. (*Stofer*, 68 Ill. 2d at 372.) This guideline is consistent with the court's determination that requiring the legislature to "continually *** determine the specific actions which ought to be prohibited and those which ought to be required would *** render the regulation of many matters hopelessly inefficient." *Stofer*, 68 Ill. 2d at 370-71.

■ The State of Illinois has adopted a strong policy of regulat-

---

[2]The Director relies on the following portions of section 154.6 (Ill. Rev. Stat. 1987, ch. 73, par. 766.6):

"§154.6. Acts constituting improper claims practice. Any of the following acts by a company, if committed without just cause and in violation of Section 154.5, constitutes an improper claims practice:
* * *
(f) Engaging in activity which results in a disproportionate number of meritorious complaints against the insurer received by the Insurance Department;
***
(h) Refusing to pay claims without conducting a reasonable investigation based on all available information ***."

ing, controlling, and supervising the business of insurance because it affects the public interest. Toward this end, the General Assembly enacted the Illinois Code (Ill. Rev. Stat. 1987, ch. 73, pars. 613 through 1065.906). (*People ex rel. Barber v. Hargreaves* (1940), 303 Ill. App. 387, 25 N.E.2d 416; see also *Kaniuk v. Safeco Insurance Co.* (1986), 142 Ill. App. 3d 1070, 1074, 492 N.E.2d 592.) To achieve this goal of regulation, the legislature, in section 401 of the Insurance Code, charges the Director "with the rights, powers and duties appertaining to the enforcement and execution of all the insurance laws of the State" and in section 401(a) grants him the power to "make reasonable rules and regulations as may be necessary for making effective such laws." (Ill. Rev. Stat. 1987, ch. 73, pars. 1013, 1013(a).) Furthermore, through section 154.6 of the Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 766.6), the legislature intends to prevent insurers from, *inter alia*, both engaging in activities which result in a disproportionate number of meritorious complaints against the insurer received by the Insurance Department and result in refusing to pay claims without conducting reasonable investigations based on all available information. Ill. Rev. Stat. 1987, ch. 73, pars. 766.6(f), (h).

In the case *sub judice*, the Director contends that the use of polygraph tests has been an area "which traditionally has been the source of many consumer complaints" and insists that additional standards were necessary to protect the public interest because, by "requesting" insureds to take the polygraph tests, insurers were effectively ignoring the former Rule 919.60(d), which prohibited requiring insureds to submit to the tests during claims investigations. (See *Marcial v. Coronet Insurance Co.* (7th Cir. 1989), 880 F.2d 954.) Rule 919.60(d), therefore, addresses two areas that the legislature specifically identified as improper claims practices.

Coronet cites *Allied American Insurance Co. v. Washburn* (1987), 159 Ill. App. 3d 1035, 513 N.E.2d 50, in support of its argument that the Director exceeded his statutory authority in amending Rule 919.60(d). In *Allied*, the Director relied upon sections 143(2) and 401 of the Insurance Code (Ill. Rev. Stat. 1985, ch. 73, pars. 755(2), 1013) to promulgate a regulation which prohibited stated value insurance policies. The court ruled that section 143(2) does not authorize the Director to bar totally the issuance of stated value insurance policies; however, it does grant the Director the authority to regulate the manner in which such policies are sold. *Allied*, 159 Ill. App. 3d at 1042.

Although *Allied* addresses the general principles involved here, it

is factually dissimilar to the case at bar and interprets a different Insurance Code provision from those which the Director has invoked here. Unlike section 143(2), sections 154.5 and 154.6 specifically set forth improper claims practice as an area to be regulated by the Director. The legislature, in section 154.6, indicates the types of conduct viewed as improper; however, in subsection (r) it gives the Director broad discretion in defining other acts "which are in substance equivalent" to the conduct previously outlined in subsections (a) through (q). (Ill. Rev. Stat. 1987, ch. 73, par. 766.6(r).) This statutory language is in contraposition to Coronet's argument that the Director exceeded his authority. Moreover, unlike the situation in *Allied*, the Director here has not barred totally all claims investigation practices utilized by insurers. Rather, he has adopted a rule which regulates the manner in which such investigations are conducted, is in accordance with legislative intent and furthers the legislative objectives.

Coronet's argument, that the General Assembly did not intend the Director to regulate polygraph examinations because that power was given to the Director of Registration and Education in "An Act to provide for licensing and regulating detection of deception examiners ***" (Ill. Rev. Stat. 1987, ch. 111, par. 2401 *et seq.*), also does not persuade. The aim of the latter statute is to protect the public health, safety and welfare; to encourage advances in the state of the art; and to assure reasonable and reliable detection of deception examinations through the licensing and regulation of examiners. *(Illinois Polygraph Society v. Pellicano* (1980), 83 Ill. 2d 130, 414 N.E.2d 458.) The stated purpose of the Insurance Code is to protect the public interest in the area of for-profit insurance. Coronet would diminish the Director's power to regulate an aspect of insurance—improper claims practices—that the legislature specifically has charged him to monitor.

■ Coronet insists that requests for polygraph tests are necessary in a time when many insureds are arranging for their cars to be stolen in an attempt to defraud the insurer; and that by using polygraph tests, these schemes can be detected. The proposed regulation, however, does not unduly restrict an insurer's ability to conduct a reasonable claims investigation. In fact, Rule 919.60(d), as amended, added the following underlined language to the rule that was formerly in effect: "The use of examinations under oath, sworn statements or similar procedures *** shall not be so restricted, if authorized under the applicable insurance contracts." The rule retains for insurers the freedom to investigate fraudulent claims, but prohibits activities which are deemed improper claims practices. The proposed amendment is within the scope of the enabling statute.

## II

Coronet advances two other arguments not ruled on by the circuit court, maintaining that this court has the authority to sustain the circuit court's decision on any grounds supported by the record, regardless of whether the circuit court relied on them. (See *Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 148, 478 N.E.2d 384.) In its first alternative argument, Coronet contends that the rule, as amended, is void because it is unconstitutionally vague. It points to the word "request" and argues that the regulation is vague because it does not bar an insurer from "suggesting" that a polygraph examination be taken.

■■■ A statute or a regulation is unconstitutionally vague and violates due process when a person of ordinary intellect cannot readily ascertain its meaning. (*People v. Gurell* (1983), 98 Ill. 2d 194, 207, 456 N.E.2d 18.) Impossible standards of specificity, however, are not required. Due process is not violated "if the duty imposed by the statute is described in sufficiently definite terms to serve as a *guide* to those who must comply with it." (Emphasis added.) (*People v. Gurell*, 98 Ill. 2d at 207; see also *Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 50, 416 N.E.2d 1082.) Applying the foregoing to the instant case, the Director's use of the word "request"[3] does not render a person of average intelligence unaware of the prohibited conduct. The plain meaning of the regulation is to preclude insurance companies from either asking or requiring their clients to submit to lie detector tests. The amendment is not unconstitutionally vague.

Finally, Coronet contends that the Director, in promulgating the amendment, failed to follow the requirements set forth in the IAPA. Although Coronet pled this allegation in its complaint, it did not advance the argument in the circuit court, stating in its memorandum in opposition to defendant's motion to dismiss that it "respectfully declines to argue this proposition at this juncture of the case. Resolution of this issue requires a factual inquiry." In its brief, however, Coronet retreats from this position and now contends that "close scrutiny of the Director's own affidavit demonstrates a violation of" the IAPA. We disagree and find as a matter of law that the Director did not violate the IAPA.

■ Coronet asserts that the Director violated section 5.01(a) of the IAPA (Ill. Rev. Stat. 1987, ch. 127, par. 1005.01(a)) by failing to

---

[3]"The expression of a desire to some person for something to be granted or done ***." Black's Law Dictionary 1172 (5th ed. 1979).

give at least 45 days' notice of its intended action to the general public. This argument overlooks section 5.01(b) of the IAPA (Ill. Rev. Stat. 1987, ch. 127, par. 1005.01(b)), which requires each agency to "provide additional notice of the proposed rulemaking to the Joint Committee on Administrative Rules. ***. The written notice to the Joint Committee shall include: (1) *the text and location of any changes made to the proposed rulemaking during the first notice period ***."* (Emphasis added.) The statute thereby contemplates that changes in text may be made during the first notice period and, if so, the changes need not again be published prior to submission to the Joint Committee on Administrative Rules. The operative section of the IAPA here is section 5.01(b), of which Coronet makes no claim of noncompliance. Based upon this record, Rule 919.60(d) was amended in accordance with the mandates of the IAPA.

From the foregoing, the circuit court's order finding that the Director exceeded his authority to promulgate amended Rule 919.60(d) and permanently enjoining the rule's enforcement was in error and must be reversed.

Reversed.

DiVITO, P.J., and SCARIANO, J., concur.