488

BOND COUNTY COMMUNITY SCHOOL DISTRICT No. 2, Plaintiff-
Appellant, v. INDIANA INSURANCE COMPANY *et al.*, Defendants-
Appellees.

Fifth District   No. 5—94—0224

Opinion filed January 26, 1995.

Thomas R. Meites, Lynn Sara Frackman, and Paul W. Mollica, all of
Meites, Frackman, Mulder & Burger, of Chicago, and Thomas Meyer, of
Meyer & Meyer, of Greenville, for appellant.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Richard A. Buchanan, Michael L. Foran, and Mark J. Seplak, of counsel), for appellee Indiana Insurance Company.

Robert C. Johnson, William T. Barker, and Steven M. Levy, all of Sonnenschein, Nath & Rosenthal, of Chicago, and Stephen C. Mudge, of Reed, Armstrong, Gorman, Coffey, Thomson, Gilbert & Mudge, P.C., of Edwardsville, for appellee Country Mutual Insurance Company.

JUSTICE LEWIS delivered the opinion of the court:

Plaintiff, Bond County Community School District No. 2 (school district), sued defendants, Indiana Insurance Company (Indiana Insurance) and Country Mutual Insurance Company (Country Mutual), who had issued "all-risks" property insurance to the school district for all of its school buildings, for asbestos-related property damage to the school district's buildings. Plaintiff sought a declaration of coverage and a monetary award in the amount of its loss. The trial court granted defendants' motions to dismiss (735 ILCS 5/2—619(a)(5) (West 1992)) on the grounds of untimely notice and suit initiation under the terms of the policies.

Two issues are presented by this appeal: (1) whether the school district is immune from the notice-and-suit-limitation provision in the insurance contracts with defendants; and (2) whether Country Mutual's policy for the period of 1977-80 lacks an effective suit-limitation term, in light of an endorsement that "cancels and replaces" the portion of the policy that contained those terms. We answer both questions in the negative and affirm the trial court's grant of the defendants' motions to dismiss.

On June 22, 1993, the school district filed a complaint against both defendants for a declaratory judgment as to the notice requirements and suit limitation of the policies and for breach of the insurance contracts. The complaint alleged that "[f]rom at least 1971 through the present, Bond County's public school buildings and facilities have contained substantial amounts of asbestos-containing materials," and that the school district had begun a costly and time-consuming removal-and-abatement program, the cost of which was estimated at over $4 million.

The school district alleged that Indiana Insurance issued an "all-risks" policy covering the school district's property, effective 1980 to 1983, that the school district filed its initial claim against Indiana Insurance for asbestos-related coverage on December 27, 1990, and that Indiana Insurance denied the claim on April 1, 1993. As to Country Mutual, the school district alleged that it issued "all-risks" insurance coverage in three separate policies covering periods from 1977 to

1980 and 1983 to 1989. The school district filed its initial claim against Country Mutual on December 27, 1990, and Country Mutual denied the claim on May 26, 1993. The school district alleged, as to both defendants, that it had "satisfied all conditions precedent to recovery under Illinois law" and that both defendants had wrongfully denied the school district's claims for its losses.

The school district attached the letters from defendants denying the claims. The letter from Indiana Insurance stated as follows:

"The facts as developed during the claim analysis show that the asbestos was installed long before the policy issuance. Asbestos consultants were first retained in 1979, and samples were taken and analyzed the same year. Removal of asbestos began in 1984. *** [T]he District has failed to comply with policy requirements in case of loss. Finally, the time allowed by the policy in which to file suit regarding the claim expired long ago."

Country Mutual denied the claim on the same basis, failure to comply with the policy requirements of notice and suit initiation, among other alleged grounds for denial.

Country Mutual filed a motion to dismiss, pursuant to section 2—619 of the Civil Practice Law (735 ILCS 5/2—619 (West 1992)), alleging that the policies under which Country Mutual was sued contained provisions "requiring any suit under the policy to be brought within one year after the loss occurs," and that it is "undisputed that the alleged loss in this case occurred more than one year prior to the time this suit was filed." Indiana Insurance filed a motion to dismiss the complaint, also pursuant to section 2—619, alleging that the complaint was insufficient at law to state a cause of action against Indiana Insurance because the school district had not given Indiana Insurance immediate written notice of the loss, had not submitted a sworn proof of loss within 60 days after the loss, and had not filed the lawsuit against Indiana Insurance within one year of the loss, all as required by the policy. The school district responded to both motions to dismiss by arguing that "it is immune to the suit and notice provisions upon which defendants rely," based upon the common law doctrine of *nullum tempus occurit regi* (time does not run against the King).

At the hearing on the motions to dismiss, both defendants argued that the doctrine of governmental immunity, or *nullum tempus*, applied only to statutes of limitations, not to suit-limitation provisions in the insurance policies issued by defendants, that the school district was bound by the unambiguous provisions of each policy requiring any suit on the policy to be filed within one year after the loss, and that because the school district had not complied with those provi-

sions, the school district's complaint should be dismissed. Indiana Insurance also argued as additional grounds for dismissal that the school district had failed to comply with the notice and proof-of-loss provisions of its policy. Plaintiff argued in response that it does not matter whether the one-year suit limitation is a statute of limitations or a provision of the contract, pursuant to the Illinois Supreme Court's reasoning in *Board of Education v. A,C&S, Inc.* (1989), 131 Ill. 2d 428, 546 N.E.2d 580, because the public interest in the removal of asbestos-containing materials (ACMs) is so great that *nullum tempus* applies either way.

The trial court granted the motions to dismiss, finding that there was no dispute that "property damage by presence of asbestos first occurred in 1971," that the school district did not submit its notice of loss to defendants until 1990, and that the lawsuit was not filed until June 22, 1993. The court stated that its initial concern was "for the broad public interest of the health and welfare of school children." The court determined that the unusual nature of the claimed loss and the public interest involved justified a strict construction of the policies against the insurers, but that the pleadings on file "indicate that the discovery of loss by the school district occurred *at the very latest in the mid-1980's.*" (Emphasis in original.) The court found it clear that plaintiff did not comply with the 60-day notice requirement or the one-year suit-initiation period of any of the policies.

The trial court found that the case law in Illinois was clear:

"A contract is a contract, an agreement is an agreement, whether made by individuals, corporations or public officials; and the parties should therefore be bound. To find otherwise would create absolute uncertainty in all commercial contract transactions with public bodies leading to unpredictable mischief and costs.

Additionally, the burden of insurance rates and expense falls both on the individual insureds [*sic*] and the taxpayers buying insurance for public bodies. Therefore, there should be some stability in the belief that the language means what it says in all agreements, including insurance contracts provided for public bodies."

Based upon this reasoning, the trial court granted the motions to dismiss with prejudice. This appeal followed.

## I. ANALYSIS

■ We start our analysis, as did the trial judge, with the well-established rule that a governmental entity must abide by its contractual obligations. (*Wall v. Chicago Park District* (1941), 378 Ill. 81, 93, 37 N.E.2d 752, 758.) Furthermore, the United States' constitutional prohibition that the States cannot pass any law impairing the obligations of contracts (U.S. Const., art. I, § 10; see also Ill.

Const. 1970, art. I, § 16) applies to government actions by municipalities. (*Wall*, 378 Ill. at 94, 37 N.E.2d at 758.) The supreme court held that, within the contractual relationship, a governmental entity stands in the same position as any other contracting party. *Wall*, 378 Ill. at 94, 37 N.E.2d at 758.

The idea that a governmental body should be able to renege or avoid its contractual obligations is certainly repugnant to the concept that a government should serve its citizens. This court has previously expressed its misgivings about a governmental unit avoiding its contractual obligations (see *Vogt v. Bartelsmeyer* (1994), 264 Ill. App. 3d 165, 636 N.E.2d 1185), so there would have to be an unusual and exceptional reason for the courts to allow such. The facts that the governmental unit contracted with insurance companies and that insurance policies are sometimes difficult to read and interpret are not the unusual and exceptional reasons that would allow avoidance of contractual obligations by a government. After all, insurance companies generally are owned by thousands of citizens, are operated by citizens, provide a needed service to our citizens, and are an important element in our economy with their investments in government bonds and private industry. The government should treat corporations as fairly as it would any of its citizens.

The issue is whether there are sufficient and exceptional reasons to justify the courts applying the common law doctrine of *nullum tempus occurit regi* to contractual obligations of a governmental body, so as to relieve the school district of its obligations under insurance policies to give a written notice of a loss within 60 days after the loss and to file its lawsuit within one year of the loss.

This old doctrine may first have been appropriated by our supreme court in *City of Alton v. Illinois Transportation Co.* (1850), 12 Ill. 38. It was clarified in *Board of Supervisors v. City of Lincoln* (1876), 81 Ill. 156, when the court held, "Our understanding of the law is, that, as respects all public rights, or as respects property held for public use, upon trusts, municipal corporations are not within the operation of the Statute of Limitations, *but in regard to contracts or mere private rights*, the rule is different, and such corporations, like private citizens, may plead or have pleaded against them the Statute of Limitations." (Emphasis added.) (*City of Lincoln*, 81 Ill. at 158.) The supreme court reaffirmed this rule in 1941 by saying, "[U]nless the terms of a Statute of Limitations expressly include the State, county, municipality or other governmental agencies, the statute, so far as public rights are concerned, as distinguished from private and local rights, is inapplicable to them." *Clare v. Bell* (1941), 378 Ill. 128, 130-31, 37 N.E.2d 812, 814.

In 1983, the Illinois Supreme Court decided that the doctrine of governmental immunity from statutes of limitations survived the enactment of the 1970 Illinois Constitution and the judicial abolition of sovereign immunity. (*City of Shelbyville v. Shelbyville Restorium, Inc.* (1983), 96 Ill. 2d 457, 451 N.E.2d 874.) The purpose of the immunity of public entities from statutes of limitations is to "preserve public rights when the government is slow to assert them on the public's behalf." (*City of Shelbyville*, 96 Ill. 2d at 463, 451 N.E.2d at 877.) In *City of Shelbyville*, the court ruled that the city was immune from the applicable statute of limitations in its action seeking damages and a court order compelling the defendant construction company to construct certain streets in a subdivision of the city. The city had waited until the statutes of limitations had long expired to enforce defendant's agreement and the city's ordinance requiring as a condition of annexation that certain streets be constructed by the defendant at no cost to the city. *City of Shelbyville*, 96 Ill. 2d 457, 451 N.E.2d 874.

*City of Shelbyville* appears to be the case that clouds the issue in the case at bar by stating:

"Nor do we find any logic in allowing the designation of the city's action as 'public' or 'private' to be controlled by the origin of the city's rights in a private contract or local ordinance [citation] or by the fact that part of the relief sought is in the form of damages." (*City of Shelbyville*, 96 Ill. 2d at 465-66, 451 N.E.2d at 877.)

*City of Shelbyville*, however, does not answer the issue in this case, since the contractor in *City of Shelbyville* raised the statute of limitations, not a provision of a contract between the parties, as a defense.

The next major case applicable to the issue is the supreme court's decision in *Board of Education v. A,C&S, Inc.* (1989), 131 Ill. 2d 428, 546 N.E.2d 580. The issue before the court in *A,C&S, Inc.* was whether the plaintiffs, 34 separate school districts, had sufficiently pleaded their causes of action against the various manufacturers and distributors of asbestos-containing material to recover the cost of the removal of ACMs from the school buildings and to recover for the repair of the schools. After deciding that the plaintiffs had stated causes of action for three of the counts, which sounded in tort, the court went on to consider the question of the school districts' immunity from the statutes of limitations, since plaintiffs had clearly filed their lawsuit outside the relevant limitations periods. *A,C&S, Inc.*, 131 Ill. 2d 428, 546 N.E.2d 580.

In *A,C&S, Inc.*, the supreme court limited its scope of review of the school districts' immunity to the statutes of limitations for the strict liability, negligence, and negligent misrepresentation counts it

found viable. (*A,C&S, Inc.*, 131 Ill. 2d at 472, 546 N.E.2d at 600.) The court in *A,C&S, Inc.* followed the rationale expressed in *City of Shelbyville*, stating that the issue, when deciding if a governmental entity is entitled to immunity from a statute of limitations, is "whether the right which the government unit seeks to assert is in fact a right belonging to the general public, or whether it belongs only to the government or some small distinct subsection of the public at large." (*A,C&S, Inc.*, 131 Ill. 2d at 472, 546 N.E.2d at 601.) The court found that the school districts' interests in pursuing their common law remedies against the various defendants in order to recoup the costs of repairs were sufficiently public to warrant immunity. *A,C&S, Inc.*, 131 Ill. 2d at 473, 546 N.E.2d at 601.

In *A,C&S, Inc.*, the court stated that it must concentrate "on the effects of the interest on the public, the governmental entities['] obligation to act on behalf of the public and the extent to which public funds must be expended." (*A,C&S, Inc.*, 131 Ill. 2d at 476, 546 N.E.2d at 602.) It would seem that $4 million for the Bond County schools would be of interest to the taxpayers in that school district and that the district will have a hard time shouldering the costs of removing ACMs, unless it could recoup some of its losses. Although it is not clear from the case law where the line of demarcation is, or what is really meant in saying, between rights belonging to the public in general and rights belonging only to some small distinct subsection of the public at large, we believe that a suit to recover losses under an insurance policy for millions of dollars is a right belonging to the public in general.

Most troublesome in *A,C&S, Inc.* was the court's ruling in the dismissal of the breach of expressed and implied warranties counts. The Uniform Commercial Code requires the buyer to notify the seller within a reasonable time of discovering a breach of warranty or else the buyer is barred from any remedy. (810 ILCS 5/2—607(3)(a) (West 1992); *Berry v. G.D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550.) The court in *A,C&S, Inc.* held that the filing of a lawsuit against the defendants was insufficient as a means of the notice required under section 2—607(3)(a). However, *A,C&S, Inc.* leaves unanswered whether the requirement to give notice within a reasonable time would apply to the Board. The court did state, however, that "when no personal injuries have been alleged and the plaintiffs are a body politic and not typical consumers, filing of a lawsuit is insufficient [notice]." (*A,C&S, Inc.*, 131 Ill. 2d at 462-63, 546 N.E.2d at 596.) There is just a hint that contractual limitations may be treated differently than limitations placed on tort actions.

In summary of the history, all we can deduce is that it was clear

under *City of Lincoln* that the doctrine of *nullus tempus* did not apply to contractual suit limitations, that the doctrine has never been used to avoid contractual suit limitations, but that now the issue may be clouded by the supreme court's concentration on the effects on the public interest, the duty of the governmental entity to act for the public, and the amount of public money involved.

The school district raises an additional problem, and that is, whether the suit-limitation provision in the insurance contracts issued by defendants is a statute of limitations or simply another provision of the contract. Plaintiff argues that the one-year suit-limitation provision is essentially a statute of limitations, because it is part of the standard fire and lightning insurance policy mandated by the legislature and prescribed by the Illinois Director of Insurance. The defendants elected not to separate fire and lightning from other risks, but instead, defendants intermingled all covered risks under the notice and suit-limitation clauses. The conclusion reached by the plaintiff is that the defendants, by their act of combining all risks, made the notice and suit-limitation clauses as to all risks a statute of limitation.

We agree with plaintiff, in part. To the extent that defendants' insurance contracts with the school district used the same terms as those required for fire and lightning insurance, without separating out terms solely applicable to the risks other than fire and lightning, the case law discussing standard fire and lightning insurance is equally relevant to all other risks insured under the policies, including asbestos abatement. (215 ILCS 5/400 (West 1992); 50 Ill. Adm. Code § 2301.60 (1986).) However, we cannot ignore the fact that the Illinois Department of Insurance Regulations provides:

> "Such other contracts or endorsements attached to or printed thereon *may contain provisions and stipulations inconsistent with the Standard Policy* to the extent they are applicable only to such other perils." (Emphasis added.) (50 Ill. Adm. Code § 2301.60 (1986).)

Thus, the school district, as a contracting party, could have insisted on or negotiated longer suit-limitation and notice-of-loss provisions than the provisions contained in the standard policy mandated by the Director of Insurance. The fact that the school district agreed, as opposed to being forced by the Director of Insurance, to include all risks under the suit-limitation and notice-of-loss provisions is even more of a reason to construe these provisions as being contractual as opposed to being statutory.

Even if we only consider whether the provisions mandated by the Director of Insurance for fire and lightning are statutory or

contractual, there is a split of authority. Two appellate courts have considered this question with opposite conclusions. In *Curtis v. Pekin Insurance Co.* (1982), 105 Ill. App. 3d 561, 434 N.E.2d 555, the Fourth District Appellate Court considered whether the one-year suit-limitation provision in a standard fire insurance policy should be deemed a statute of limitations or simply another provision of the insurance contract for purposes of Supreme Court Rule 103(b) (134 Ill. 2d R. 103(b)). (*Curtis*, 105 Ill. App. 3d 561, 434 N.E.2d 555.) The fourth district relied on two prior Illinois Supreme Court decisions in determining that the mandatory one-year suit-limitation provision in all standard fire and lightning insurance policies was "essentially statutory as opposed to contractual in nature." (*Curtis*, 105 Ill. App. 3d at 565, 434 N.E.2d at 558 (relying on *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 369 N.E.2d 875, and *Roth v. Northern Assurance Co.* (1964), 32 Ill. 2d 40, 203 N.E.2d 415).) It should be noted, however, that *Curtis* did not decide that the plaintiff would not be bound by the suit-limitation provision, but rather that the plaintiff was bound by the provision and that plaintiff failed to use reasonable diligence to effectuate service of process on the defendant as required by Supreme Court Rule 103(b).

The Second District Appellate Court, when presented with the issue of statutory versus contractual, ruled that the suit-limitation provision in a standard fire and lightning insurance contract was merely a "contractual agreement by which plaintiff affirmatively agreed to commence suit" within one year of the loss that formed the basis of the lawsuit. (*Village of Lake in the Hills v. Illinois Emcasco Insurance Co.* (1987), 153 Ill. App. 3d 815, 819, 506 N.E.2d 681, 684, *appeal denied* (1987), 116 Ill. 2d 560, 515 N.E.2d 128.) The court found that the plaintiff city did not comply with the one-year filing limitation, and the court affirmed the trial court's dismissal on that basis. *Village of Lake in the Hills*, 153 Ill. App. 3d 815, 506 N.E.2d 681.

The United States Court of Appeals for the Seventh Circuit recently considered the same issue that is before this court in *Affiliated FM Insurance Co. v. Board of Education* (7th Cir. 1994), 23 F.3d 1261. The court of appeals upheld the district judge's ruling that the board of education was barred from commencing suit for ACM losses against the insurer because such suit was not commenced within 12 months of the loss. The Federal court believed that the law in Illinois was so well settled, that is, the doctrine of *nullum tempus* did not grant immunity to the board of education against the 12-month suit-limitation provision, that it refused to certify the question of State law to the Illinois Supreme Court.

■ The only cases directly on point, *Village of Lake in the Hills*

and *Affiliated FM Insurance Co.*, have held the suit-limitation provisions to be contractual. Defendants cite cases from other jurisdictions that mainly uphold the general rule of law that the government is bound by its contracts (we see no need to cite such cases). The school district did not cite any authority from other jurisdictions that would support its position. Therefore, what little law that exists, other than general contract law, supports the defendants' position.

The supreme court in *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 369 N.E.2d 875, recognized that the insured may benefit from lower premiums because of the suit-limitation provisions. In the case at bar, the defendants bemoan the fact that they are defending against a loss that occurred more than 20 years prior to the suit being filed. If the defendants had known that they might be held liable, contrary to the suit-limitation provisions, their rates most surely would have been higher to cover the increased risks caused by an unlimited time exposure to liability. Thus, if we granted the school district's prayer, we not only would be allowing the school district to renege on the terms of its agreement with defendants, but we also may be allowing the school district to escape paying a proper premium for the additional risks incurred by the defendants.

Moreover, we have to recognize the lessening of the value of defendants' rights to subrogation. If the doctrine of *nullum tempus* does apply, will it also apply to the defendants' subrogation rights to sue the manufacturers and distributors of asbestos? After all, the statute of limitations has long expired against the manufacturers and distributors, as was discussed fully in *A,C&S, Inc.* Further, the brand of the asbestos or the evidence of sales by certain manufacturers and distributors to the school district dating back to 1971 may be impossible to obtain after the expiration of such a long period of time. If we allow this case to proceed, we are placing, in effect, the complete loss on the defendants, who did nothing wrong, with little or no chance for recovery from the wrongdoers. It would appear that the school district is the only party that has a chance of recouping its losses from the wrongdoers.

What kind of public policy is it that would allow wrongdoers to escape liability because of the neglect of government officials? What incentive is there to make the government officials more diligent in their duties, if we rule that the government does not have to be diligent in protecting its rights?

Finally, the appellate courts have indicated that if a major exception to generally accepted legal principles is created, or if a new public policy is established, the legislature or the supreme court should do so, not an intermediate court of review. (*Harrell v. Dillard's*

*Department Stores, Inc.* (1994), 268 Ill. App. 3d 537; *Ruth v. Benvenutti* (1983), 114 Ill. App. 3d 404, 449 N.E.2d 209.) We consider plaintiff's prayer to this court, a request for us to hold that a governmental body is immune from suit-limitation and notice-of-loss provisions of insurance contracts that it entered into, to be a major exception to the general contract principle that a government is bound by its agreements. We note that in *Affiliated FM Insurance Co.*, the court found that the estimated cost in removing asbestos from Chicago's schools alone would be $500 million. It may be that if an exception is made to general contract principles, major bankruptcies could occur not only in the insurance industry but also in other industries. There probably are thousands of existing contracts and thousands of contracts that expired long ago between private industry and local and State governments that have notice and suit limitations, especially as to expressed and implied warranties. All of these old contracts would be subject to revival, if we were to make such a major exception to general contract principles, and the protection given by all-risk business insurance would have long expired. The doctrine of *nullum tempus*, even if it were to apply to suit-limitation and notice-of-loss provisions, may be outweighed by other public policy considerations. The legislature and the supreme court, not the appellate courts, are the proper forums to weigh public policy issues and to make major changes in the law that could have a major impact on the economy.

## II. CANCELLATION OF SUIT-LIMITATION PROVISION

Plaintiff argues that the first of the three Country Mutual policies, effective 1977-80, does not contain any suit-limitation provision. Plaintiff bases this argument upon the declarations page of the policy, even though the policy itself has been lost by both plaintiff and Country Mutual. Plaintiff asserts that in two separate places in the policy the general terms of the declaration page are subordinated to the particular terms of the "all-risks" policy, which contains no suit-limitation term.

Country Mutual argues that the form upon which plaintiff relies does not cancel the one-year suit limitation. We agree. The endorsement plaintiff refers to reads as follows:

> "With respect to SECTION I—PROPERTY COVERAGE, this form cancels and replaces any coverage on buildings or personal property provided under any other form made a part of the policy, but only with respect to such property to which this form is shown to be applicable."

The endorsement, which is the only portion of the policy the parties have been able to find, merely states that it replaces any other specific property coverage. Contrary to plaintiff's assertion, the endorsement does not state that it replaces all other provisions in the policy. This is made even more clear by the next section of the same endorsement upon which plaintiff relies.

"This policy insures against all risks of direct physical loss to Coverage A—Building[s] and Coverage B—Personal Property, *subject to the provisions and stipulations herein and in the policy of which this form is made a part.*" (Emphasis added.)

Country Mutual argues, and we agree, that by its unambiguous terms, the endorsement indicates that it is subject to the more general provisions of the policy, which include the same one-year suit-limitation provision found in all fire and lightning insurance policies in the State of Illinois.

This result is consistent with the well-settled law that if an insurance policy is clear and unambiguous, it is enforceable according to its terms. (*Waste Management, Inc. v. International Surplus Lines Insurance Co.* (1991), 144 Ill. 2d 178, 579 N.E.2d 322.) Furthermore, an insurance policy cannot be read piecemeal but must be construed as a whole, giving effect to every provision. (*Standard Mutual Insurance Co. v. Petreikis* (1989), 183 Ill. App. 3d 272, 538 N.E.2d 1327.) Finally, insurance policy provisions are not to be construed so as to yield absurd results. *State Farm Fire & Casualty Co. v. Kohen* (1981), 98 Ill. App. 3d 860, 424 N.E.2d 992.

█ It would be absurd to find that the 1977-80 policy provided coverage to the school districts for all risks but that it contained absolutely no suit-limitation provision, even though such a provision is required to the extent that the policy covers fire and lightning insurance. To the degree that the comprehensive coverage contained provisions applying to fire and lightning insurance, we have already determined that the insurance companies cannot legally change the requirements of the standard policy without specifically stating the exceptions that apply to the supplementary coverage. (215 ILCS 5/400 (West 1992); 50 Ill. Adm. Code § 2301.60 (1986).) Additionally, if we were to accept plaintiff's argument, we would also have to find that the endorsement cancels and replaces all other general provisions of the policy, including provisions voiding the policy for fraud and allowing the insured to cancel the policy at any time. We will not construe the policy to require such absurd results. Therefore, the trial court was correct in dismissing the complaint as to the 1977-

80 Country Mutual policy, as well as to the rest of the policies.

Affirmed.

MAAG, P.J., and WELCH, J., concur.